## The President &c. of the COMMERCIAL BANK *versus* JOHN FRENCH.

A joint and several promissory note, made by T, as principal, and the defendant, as surety, payable to a bank, on demand, as collateral security for a check given by the principal for a loan of money, remained in the bank six months before it was entered on the bank books, the loan being intended to be temporary, and the surety was not called on for payment, nor was notice given him of the non-payment of the note, until after *the further lapse of six months, when the principal had become insolvent.* It was *held,* that these circumstances constituted no defence to the surety, in an action on the note.

Where a promissory note was made payable " to the cashier of the Commercial Bank or his order," and the consideration proceeded from the bank, it was *held,* that an action on the note might be maintained in the name of the bank as the promisee.

ASSUMPSIT on a promissory note as follows :

" Boston, Sept. 28, 1835.   For value received I, John Thompson, as principal, and I, John French, as surety, jointly and severally promise to pay the cashier of the Commercial Bank, Boston, or his order, nine thousand dollars, on demand with interest.

John Thompson.
John French."

The note was not indorsed.

The cause was tried before *Putnam* J.

Parker H. Peirce, the president of the bank, a witness on the part of the defendant, testified that Thompson owed money to the bank at the date of the note.   About that time Thomp-

son applied to the witness for a further loan. The witness agreed to lend him $ 9000 upon his check and French's name as collateral security. Thompson brought the note and gave his check for the amount, and took bills of the bank to the same amount. The check was presented to the teller and he paid the money for it by the direction of the witness. It was a temporary loan, and the note was not discounted, and was not passed nor entered upon the books of the bank as a note discounted. The transaction appears only in one place in the books of the bank, that is, on the discount books, and this, not at the time when the money was lent, but in March, 1836, when the note was entered with notes discounted. Thompson was often requested to pay this loan. French was never applied to, nor was any thing said to him about it, until after Thompson had failed, in October, 1836.

Joseph Andrews, a witness on the part of the defendant, testified that he was the cashier when this note came into the bank, and ever since. Until the 14th of March, 1836, the note and Thompson's check of the same date and amount, were both kept by the teller as cash, in his department. It was considered a temporary loan until that time. It was then considered permanent and appeared in the books as a discount. During the time that this note was at the bank, Thompson paid large sums which he owed the bank and for which the defendant was liable. No notice was given to the defendant, of the change as to this note, nor was any notice given to him upon the subject, nor claim made upon him, until Thompson failed.

The defendant insisted, that the note was made payable to the cashier, and not to the bank, and not being indorsed an action upon it in the name of the bank could not be sustained ; but that if it was a note designed to be payable to the bank as payee, then the defendant had a right to expect that it would be discounted in the usual and most common mode, according to banking principles and usages ; that if the plaintiffs departed from such usages and dealt with the note not in the ordinary and usual manner, and that without the consent of the defendant and without notice to him, then he, being a surety, was released from liability upon the note.

The judge overruled these objections to a recovery upon the note, and a verdict was taken for the plaintiffs by consent, subject to the opinion of the whole Court.

*H. H. Fuller*, for the defendant. The promise was not to a corporation, but to an individual or natural person. The plaintiffs were incorporated by the name of The President, Directors and Company of the Commercial Bank, and by their corporate name only can they take. *St.* 1828, *c.* 96, § 2 ; *St.* 1831, *c.* 24 ; Com. Dig. *Franchise, F* 9 ; 1 Kyd on Corp. 226, 234 ; Bro. Abr. *Corp. pl.* 65. The action should be brought in the name of the party in whom is the *legal* interest. 1 Chit. Pl. (1st ed.) 2 ; Hammond on Parties, 4, 10, 217, 278 ; 2 Troubat & Haley's Pract. 92 ; *Dawes* v. *Peck*, 8 T. R. 330 ; *Company of Feltmakers* v. *Davis*, 1 Bos. & Pul. 98 ; *Sussex Sidney College* v. *Davenport*, 1 Wils. 184 ; 4 Petersd. Abr. 268, 269 ; *Blanckenhagen* v. *Blundell*, 2 Barn. & Ald. 417 ; *Allen* v. *Ayres*, 3 Pick. 298 ; *Fisher* v. *Ellis*, 3 Pick. 322.

The check was the debt, and the note was collateral security. Time was given to the principal without notice to the surety, the temporary loan being changed to a permanent one, and the surety was thereby discharged. *Kennebec Bank* v. *Tuckerman*, 5 Greenl. 130 ; *Baker* v. *Briggs*, 8 Pick. 122.

*Sprague* and *E. Blake, contrà*, to the point, that the action was rightly brought in the name of the bank, cited 1 Chit. Pl. (5th ed.) 7 ; *Medway Cotton Manufactory* v. *Adams*, 10 Mass. R. 360 ; *Irish* v. *Webster*, 5 Greenl. 171 ; *Trustees &c. in Levant* v. *Parks*, 1 Fairfield, 441 ; *The State* v. *Boies*, 2 Fairfield, 474 ; Angell & Ames *in* Corp. 54 ; *Thatcher* v. *Winslow*, 5 Mason, 58.

MORTON J. delivered the opinion of the Court. The plaintiffs are the *bonâ fide* holders of the note, for a valuable consideration. The circumstance that they originally received it as collateral security, can have no effect upon the validity of the contract or the liability of the parties.

Nor can the character in which the defendant became a party to the note, avail him. It is payable on demand and draws interest from its date. It could not therefore have been the expectation of the parties, that it was to be *discounted*, or that

payment would be immediately demanded. There is no evidence that the defendant has suffered by the delay. It cannot properly be called a prolongation of credit, as no time of payment was fixed. Nothing is better settled, than that the voluntary forbearance to collect, or the mere delay to prosecute upon any kind of security, will not discharge a surety. To produce that effect there must be either a valid agreement not to enforce payment, a denial of a reasonable request, on the part of the surety, to collect, or some fraud or negligence of the obligee or promisee, injurious to the surety. *Hunt* v *Bridgham*, 2 Pick. 581 ; *Baker* v. *Briggs*, 8 Pick. 123 ; *Ludlow* v. *Simond*, 2 Caines's Cas. 30 ; *Pain* v. *Packard*, 13 Johns. R. 174 ; *Powell* v. *Waters*, 17 Johns. R. 176 ; *King* v. *Baldwin*, 2 Johns. Ch. R. 557 ; *Hayes* v. *Ward*, 4 Johns. Ch. R. 129.

But the only objection much relied upon or worthy of much consideration, relates to the form of the action. The note is in terms payable to " the cashier of the Commercial Bank ; " and the defendant contends that the action should have been brought in the name of the person who was then cashier and will not lie in the name of the corporation. It is not denied that the property of the note is and ever has been in the plaintiffs ; but the argument is, that the promise being in the name of the cashier, although made to him in trust and for the benefit of the corporation, it can only be enforced in his name.

It is a familiar rule of pleading, that contracts must be declared on according to their legal import and effect, rather than their literal form. 1 Chit. Pl. (1st ed.) 299, 302. We should therefore first seek the true import of the contract under consideration. If it be in truth a promise to the individual who was cashier when it was made, and not to the corporation, it is very clear that the plaintiffs cannot maintain this action. For ne alone to whom a promise is made, or in whom its legal interest is vested, can enforce its performance or complain of its breach. Hammond on Parties, 4 ; 1 Chit. Pl. (1st ed.) 3 to 5, and cases there cited ; *Allen* v. *Ayres et al.* 3 Pick. 298.

A contract may be made to or with a person, as well by description as by name. And where the parties can be ascertained, it will be valid, although their names be mistaken or

their description be incorrect. It cannot be doubted that a note to the *Commercial Bank* would be valid and might be declared on as a promise to the plaintiffs, although their legal name is, " *The President, Directors and Company of the Commercial Bank.*" So a contract with the *stockholders*, or with *the president and directors*, or with *the directors* of *the Commercial Bank*, would doubtless be, in its legal effects, a contract with the corporation. It is not easy to perceive why a contract with the cashier of a bank is not a contract with the bank itself. The accounts of banks with each other are usually kept in form with the cashiers, but undoubtedly the banks themselves are the real parties to them. *The Master &c. of Sussex Sidney College* v. *Davenport*, 1 Wils. 184.

A corporation being an incorporeal being and having no existence but in law, can neither make nor accept contracts, receive nor pay out money, but by the agency of its officers. They are the hands of the corporation by which they execute their contracts, and receive and make payments. Of these officers the cashier is the principal. If the note had been made to the corporation, by its appropriate name, the same officer would have demanded and received payment, or would have given notice of non-payment and protested it, and, had it been negotiated, would have made the indorsement, and in precisely the same form as he would upon this note.

There are several decisions in our own reports, which support this view of the subject, in cases less strong than the present. In the *Medway Cotton Manufactory* v. *Adams et al.* 10 Mass. R. 360, it was decided, that a note payable to *Richardson, Metcalf & Co.* might well be declared on as a promise to *The Medway Cotton Manufactory.* In the *Taunton and South Boston Turnpike* v. *Whiting*, 10 Mass. R. 327, it was holden, that the promise, in a subscription paper, to pay the assessments which should be made on certain shares, to John Gilmore or order, would support an action in the name of the corporation. And in *Gilmore* v. *Pope*, 5 Mass. R. 491, it was directly decided, that an action would not lie upon the same subscription in the name of Gilmore, but must be brought by the corporation. *Piggott* v. *Thompson*, 3 Bos. & Pul. 147.

The principle is, that the promise must be understood accord-

ing to the intention of the parties. If in truth it be an undertaking to the corporation, whether a right or a wrong name, whether the name of the corporation or of some of its officers be used, it should be declared on and treated as a promise to the corporation. And there is no so safe criterion as the consideration. If this proceed from the corporation, it raises a very strong presumption that the promise is made to them. If no express promise be made, but it be left to legal implication, t must be to them.

Some later cases have the appearance of clashing a little with the two last above cited. But probably they may be reconciled by a reference to the different nature of the promises declared on and the different state of the facts. In *Fisher* v. *Ellis*, 3 Pick. 322, it was decided that a note payable to the treasurer of a parish, though given for the funds of the parish, might well be sued in the name of the treasurer. And in *Fairfield* v. *Adams*, 16 Pick. 381, it was holden, that a note indorsed to S. S. Fairfield, cashier, would sustain an action in the name of Fairfield. See also *Little* v. *O'Brien*, 9 Mass. R. 423; *Brigham* v. *Marean*, 7 Pick. 40. Great favor and indulgence is always shown to negotiable securities. The above cases seem to show, that upon such paper, when made in the name of an agent or officer, though the beneficial interest be in the corporation, they may be sued by him. But they do not show that an action might not also be maintained in the name of the corporation. The contrary is plainly intimated in *Fisher* v. *Ellis*. It has been the practice to sue towns on notes given by their treasurers. Many such actions have been brought and maintained. See Precedents of Declarations, 111. If a note given by the treasurer of a corporation, is the contract of the corporation, we can see no sound reason why a note given to the treasurer should not be an available promise to the corporation.

There is an obvious and broad distinction between the case at bar and those of *Fisher* v. *Ellis* and *Fairfield* v. *Adams*. Had the note been made to the cashier, by name, the addition of " cashier of the Commercial Bank," might have been considered as *descriptio personæ*, used to designate as between him and the bank the relation he bore to it in the transaction,

and the individual might have been deemed the promisee as in those cases. But such was not the fact, and we discover no valid objection to the plaintiffs' recovery.

*Judgment on the verdict.*