1803.

*Wednesday,*
December
21st.

The President, &c. of the Delaware and Schuylkill
Canal Navigation *against* Sansom.

Where a
penalty has
for its end to
insure the
performance
of the prin-
cipal obliga-
tion, it does
not destroy
it. The sub-
scribers to
the stock of
the Dela-
ware and
Schuylkill
canal sign-
ed an agree-
ment to pay
200 dolls. for
each share
as the same
should be
called for.
The act of
Incorpora-
tion autho-
rizes the
managers to
call for pay-
ments, and
inflicts a
penalty of 5
per cent. per
month, upon
defaulters,
and says,
that when
the penalty
shall amount
to the sums
paid in, the
share *shall*
be forfeited.
Held that
the company
may waive
the forfei-
ture, and
proceed per-
sonally upon
the agree-
ment.

IN this cause the following case was stated for the opinion of
the Court:

" The legislature of *Pennsylvania,* by an act passed on the
" 10th *April* 1792, entitled ' an act to enable the Governor of
" the commonwealth to incorporate a company for opening a
" canal and water communication between the rivers *Dela-*
" *ware* and *Schuylkill,* and for other purposes therein men-
" tioned,' appointed *David Rittenhouse* and others, commis-
" sioners to do and perform the several duties thereinafter men-
" tioned; and among other things directed that the said com-
" missioners should procure a book or books, and therein enter
" as follows: ' We whose names are hereunto subscribed do pro-
" mise to pay to the president and managers of the *Delaware*
" and *Schuylkill* Canal Navigation the sum of two hundred
" dollars for every share of stock in the said company, set
" opposite to our respective names, in such manner and pro-
" portions, and at such times as shall be determined by the said
" president and managers in pursuance of an act of the Gene-
" ral Assembly of this commonwealth, entitled, ' An act to
" enable the Governor of this commonwealth to incorporate a
" company for opening a canal and water communication
" between the rivers *Delaware* and *Schuylkill,*' and give notice
" of the time and place where the said book or books would be
" open to receive subscriptions of stock for the said company;
" which was accordingly done.

" On the ——— day of ——— in the same year, the defendant
" subscribed his name to the writing entered as aforesaid in
" one of the said books, for five shares of the stock of the
" said company.

" On the same day a certain *Thomas P. Anthony* in like
" manner subscribed his name for five shares of the said stock,
" a certain *John Stille* for five shares of the said stock, a cer-
" tain *John Maybin* for two shares of the said stock, a certain
" *Robert Bully,* jun. for two shares of the said stock, and a cer-
" tain *John Holland* for one share of the said stock, which said
" *John Stille, John Maybin, Robert Bully* and *John Holland*

1803.

Canal
Company
*v.*
SANSOM.

" afterwards severally transferred the said shares by them re-
" spectively subscribed, to the said *Thomas P. Anthony,* who
" on the ——— day of *February,* in the year of our Lord 1794,
" transferred the same together with the said five originally
" subscribed by him to the said *William Sansom;* which said
" several transfers were all made in the manner authorized by
" the seventh section of the act hereinbefore recited.

" The said *William Sansom* did pay one or more instal-
" ments, or they or some of them were paid by the persons of
" whom he purchased, as above stated.

" The whole amount of the two hundred dollars subscribed
" for each share has at different times been called for in instal-
" ments in the manner directed by the aforesaid act.

" Question I. Is the said *William Sansom* liable to pay the
" amount of his subscriptions, yet remaining unpaid, on the said
" five shares originally subscribed and yet held by him, together
" with the usual legal interest thereon, or with the penal interest
" given by the tenth section of the aforesaid act? Or can the
" corporation only forfeit and sell the said shares, in the manner
" directed by the said section?

" Question II. Is the said *William* liable to pay the amount of
" all the instalments yet unpaid, with the usual legal interest
" thereon, or with the said penal interest, on the said fifteen
" shares transferred to him as aforesaid, or only such of said
" instalments as became due after the transfer of the said shares
" to him? Or can the corporation only forfeit and sell the said
" shares in the manner prescribed by the said act?"

" If on the foregoing statement of facts the court shall be of
" opinion in favour of the plaintiffs, then judgment to be entered
" for the plaintiffs, the amount to be settled by the parties. If
" the court shall be of opinion in favour of defendant, then judg-
" ment to be entered for the defendant."

The 10th section of the act is in the following terms, " That
" the said president and managers shall have power and autho-
" rity from time to time to fix the several sums of money
" which shall be paid by the subscriber or holder of every
" share of the stock of the said Company, in part or for the
" sum subscribed, and the time when each and every dividend
" or part thereof shall be paid, and the place where it shall be

1803.

Canal
Company.
*v.*
SANSOM.

"received, and shall give at least thirty days notice in three of
"the public newspapers published in the city of *Philadelphia* as
"aforesaid, of the sum or dividend, and the time and place of
"receiving the same; and if the holder of any share shall ne-
"glect to pay such proportions at the place aforesaid, for the
"space of sixty days after the time so appointed for paying the
"same, every such shareholder or his assignee, shall in addi-
"tion to the dividend so called for pay after the rate of *five per*
"*centum for every month's delay* of such payment; and if the
"same and the said additional penalty shall not be paid for
"such space of time, as that the accumulated penalties shall
"become equal to the sums before paid for and on account of
"such shares, the same *shall* be *forfeited* to the said Company,
"and *may* and *shall* be sold by them to any person or persons
"willing to purchase, for such prices as can be obtained there-
"for." 3 *St. Laws* 280.

It was argued by *Morgan* and *Ingersoll* for the plaintiffs, and
by *Milnor* and *Rawle* for the defendant.

For the plaintiffs. The remedy of the Canal Company is not
confined to the forfeiture authorized by the 10th section. 3 *St.
Laws* 280. There is a positive unconditional promise by each
*original* stockholder to pay two hundred dollars for every share
subscribed. It is a promise made unconditionally before any
corporation existed. Without such promise no plan could have
been concerted; the penalty would operate to distress the punc-
tual and to release the defaulters. The canal was an enterprise
of such vast magnitude, and so entirely useless without com-
pletion, that any other object in framing the terms of subscrip-
tion, and the sections of the act, than that of exacting the whole
sum, would have been folly.

The *forfeiture* is given as a security to the general powers
of the corporation; as a mode of compelling under certain cir-
cumstances a more prompt payment of the instalments, than
by the process we now adopt; as a means to *enforce* without
*merging* the original obligation.

The rule of *Pothier* in his treatise on obligations is the true
and reasonable rule. " When the penalty has for its end to in-
" sure performance of the principal obligation, it does not de-
" stroy it." 1 *Oblig.* 328. Where a penalty is intended merely to

secure the enjoyment of a collateral object, the enjoyment of the object is considered as the principal intent of the deed, and the penalty only as accessional. *Sloman* v. *Walter.* (*a*) Equity considers the penalty only as a collateral guard to the agreement, which still remains the same, and unimpeached by the parties, providing a *further remedy* at law for the performance. 1 *Fonbl.* 141. *Lowe* v. *Peers.* (*b*) 2 *Pow. on Contr.* 136. *Howard* v. *Hopkins.* (*c*) 3 *Bl. Com.* 434. *Parks* v. *Wilson.* (*d*) 12 *Vin.* 204. *pl.* 3.

*The transferee* is in the same situation by this act, as the original subscriber; he takes the share *cum onere.* 3 *Woodes.* 87. 2 *Danv. Ab.* 238. 6 *Viner* 463.

For the defendant. This case turns upon the construction of a statute by the common rules; and which, inasmuch as it is a particular statute, cannot be construed beyond the letter. *Threadneedle* v. *Lynam.* (*e*) *Litt. Rep.* 247.

Every contract, whatever may be its expressions, must be expounded according to the intention of the parties. The intention must be drawn from the whole instrument; and references to and recitals of other instruments make them part of, or incorporate them with the principal instrument. 2 *Saund.* 412.

Where the penalty is intended as a collateral security, the principal obligation is not waived; but this is not our case. The contract according to the first section is good for nothing unless it refers to the act; it is without object, without consideration, without parties; and in addition to this, there is a clause of direct reference contained in the very body of the contract. The error lies in separating the agreement from the law; the contract is then taken as a distinct engagement, and the forfeiture as a distinct penalty; but when considered together, the different sections of the law are like so many paragraphs in a will, which courts will so mould as to get at the intention; and the forfeiture is then seen to be the *very* penalty of the contract, and the only one.

There is in the first place no *discretion* left to the company whether they will or will not forfeit the shares. The forfeiture is *peremptory;* " the same *shall* be forfeited." It takes place *ipso*

(*a*) 1 *Bro. Rep.* 418.     (*c*) 2 *Atk.* 371.     (*e*) 2 *Mod.* 57.
(*b*) 4 *Burr.* 2228.     (*d*) 10 *Mod.* 519.

K

*facto* upon delinquency; there is no inquest, no publication preparatory to it. Can the legislature have intended this as an additional penalty, when at all events it must be inflicted? Is it alternative when there is no choice? It being the duty of the corporation to consider these shares as forfeited, an omission by them cannot alter the case of the subscribers, who are by the tenth section completely discharged. A remedy given by statute must be pursued, particularly by corporations, the very creatures of statute. *Kirk* v. *Nowill.* (a) *Rex* v. *Croke.* (b) The application of *shall* to the forfeiture, and of *shall* and *may* to the sale, very clearly shews the intention of the legislature.

The forfeiture is not intended to *enforce payment*, but it is to destroy his right to hold the share, and therefore discharges his obligation. It is in the nature of a *liquidated satisfaction*, which cannot be exceeded or waived. *Rolfe* v. *Patterson.* (c) 1 *Fonbl.* 142.

The act says that *Sansom* is not a stockholder; the corporation say he is; and the court would repeal this section of the charter, if they should coincide with the corporation.

[SMITH J. If the penalty goes to themselves, cannot they remit it?]

We conceive not. They have no power by a bylaw to excuse what by the articles of their constitution it is compulsory upon them to exact. But if he is a member of the corporation, their general authority does not extend to suits against their own members as such. They must have the power specially granted.

As to *transferee*, he has not promised either expressly or impliedly. By the seventh section he takes the shares *subject to payments due and to grow due*, and nothing further.

In reply, the obligation of the transferee was given up. But the power of suing its own members was said to be incidental to every corporation; and moreover that at the time of making the subscription, there was no corporation, but individuals to whom the corporation succeeded.

The question of penal interest was scarcely touched upon in the argument, as it seemed to be acknowledged that it was a mere prelude to forfeiture, and could not be exacted under the bond.

(a) 1 *D. & E.* 118.       (b) *Cowp.* 26.       (c) 6 *Bro. P. C.* 470.

The opinion of the court was delivered by

**1803.**

Canal Company *v.* Sansom.

YEATES J. The court have no difficulty in this case. The terms of subscription must no doubt be taken with the act at large, but there is nothing in the act to annul the unconditional and express promise demanded by the first section. The power given to the company by the tenth section is merely discretionary; the penalty is in favour of the company, it is intended to enforce the payment of the subscription, and they may waive it as they have done in this case. As to the original shares then, there must be judgment for the plaintiffs for the sum remaining due, with interest at six per cent.

The shares which the defendant holds as transferee stand on a different ground; as to them he has given no express promise to pay, and the act has made no other provision than that the *shares* should be *subject* to the payments.

SHIPPEN C. J. was not present at the argument.