Sewall, J.
In this action, the special promise of the defendant is alleged to this effect, — that he will take four shares in the turnpike road then about to be located and made, and will pay, on demand, to J. G., or order, all assessments that may at any time be made by the corporation, for the purpose of laying out the road, making and keeping the same in repair, and for damages to individuals for land, &c., provided said road is laid out, &c. The plaintiffs aver a road laid out according to this proviso ; and assess ments at several times, to a certain amount upon each share, for the purposes designated in the subscription paper ; and actual expenditures on the road, and in the purchase of lands, to the amount of the assessments; also due notice to Mr. Whiting of the assessments upon his four shares. These are alleged to amount to the sum of five hundred and sixty dollars in the whole; and it is then averred that, being so indebted, he promised to pay the same accordingly; yet, though requested, he neglects so to do.
The verdict found for the plaintiffs is to be considered as establishing these averments; and also the liability of the defendant *330 upon the allegations of the writ, if that is a legal and just implication.
It has been argued, for the defendant, that, in point of form, this is an incorrect declaration; that he is liable, if at all, according to the tenor of the supposed special promise, and not upon any implied promise, arising on his agreement and the circumstances connected with it, such as the laying out of the road, the assessments, expenditures, &c.
This objection might be more suitably urged on a motion in arrest of judgment; but in this stage of the cause it may be proper to observe upon it that this form of declaring is not unusual, and is very convenient and technical, where the liability of the party, holden by a special agreement or contract, depends in part only upon the express promise, and when it is necessary to [* 332 ] aver and prove, either subséquent * events, or something done and performed by the plaintiff, to entitle him to his action on the agreement. (5)
The objections principally relied on for the defendant, and upon which his motion for a new trial is grounded, are to the evidence admitted, and the construction given to it in the directions under which the jury proceeded in finding their verdict.
According to the report before us, the jury have found the verdict upon evidence derived from a copy only of the writing subscribed by the defendant, or what may be called testimony of the contents of the original writing. The admission of this evidence was objected to at the trial, and the objection was overruled, upon testimony of the existence of the writing, and of the production of it by the defendant himself at the first meeting of the corporation under their charter, when the defendant was appointed their clerk. The witness then copied the writing, upon an assurance, expressed, by the defendant himself, that the writing was. so framed as to make the subscribers personally liable for all assessments upon the shares subscribed; and the defendant, as clerk, then received the original, and having continued clerk until the year 1810, when the witness succeeded him, and received of him all the official papers which he acknowledged to be in his possession. The original writing, subscribed, among others, with the defendants name, was then missing, and he was notified of it, and required to produce it. The defendant then declared that the writing had been lost, or was mislaid.
We are satisfied that, upon these circumstances, proved at the trial, the evidence of the contents, and of the copy taken of the original writing, was properly admitted to charge the defendant. *331 This is not the case of a writing which, by some accident, may be under the control of the party against whom it is wanted as evidence, or where he is entitled to the possession of it. In that case, proof of the contents is to be introduced by notice to the party to produce the original. But in the case at bar, the defendant
* had the possession of his contract with the corporation officially, under the sanction of his oath as clerk; and
[ * 333 ]
no mismanagement or negligence on his part is to operate to deprn e the corporation of the benefit of this writing, when to be used against him. If existing, he is still holden by the tenor of his official oath to produce it; if lost, and not existing, then the evidence admitted is the best which can be produced , and the rule of law in this respect is fully complied with. Certainly against the defendant this evidence must be taken to be the best, whether by his negligence the corporation have been deprived of the original, or whether, according to his account, it must be considered as lost.
As to the construction of this evidence, supposing it competent, we think the jury were rightly directed, and that their conclusion upon it is sufficiently maintained. We lay no stress upon the verbal declaration made by the defendant, when he produced the writing he had formed and subscribed, if the testimony in this particular is correct, it is for the defendant to reconcile it with the defence now insisted upon by him and his counsel; this being a question of morals for his personal consideration. In this action we are called upon to enforce only the legal obligation, which must depend exclusively, we think, upon the import and effect of the written contract.
In the case of The Worcester Turnpike Corporation vs. Willard, (6) which was cited in the argument for the plaintiffs, this Court decided that a writing subscribed by the defendant, expressed as a contract to take one share, &c., and to pay all legal assessments, with a proviso as to the location of the road, was a personal engagement to pay assessments, which gave to the corporation a cumulative remedy against the subscriber, in addition to the remedy provided by the statute, to enforce the payment of assessments by a sale of shares.
On the other hand, in the case of The Essex Turnpike Corporation vs. Collins, (7) there is a decision of this Court for the defendant, when charged upon a subscription for * turnpike [ * 334 ] shares, expressed in the same words with that subscribed oy Willard. But in this last decision the Court were not finally determined by the tenor of the promise, but by the circumstance? under which it was made.
*332 As we are not disposed to controvert the authority of these decisions, we shall, without adverting to others which have been cited, but which are not so immediately relevant to the case at bar, endeavor to place the present decision upon a footing consistent with the cases of Willard and of Collins, and established by the principles adopted in those decisions. In both of them, a promise to pay assessments, as well as to take shares, was considered as entitling the corporation to a cumulative and personal remedy.
In the case of Willard, this was enforced, because he had become a proprietor in the turnpike, in consequence of this collateral promise on his part; that is, after his subscription, to which he was invited, pursuant to a vote of the corporation; and after their acceptance of his engagement, he must be understood to have received of them a certificate for the share he had subscribed ; for he paid the first assessment upon it, and was therefore to be considered as having become a subscriber upon the terms proposed by his subscription.
In the case of Collins, it was otherwise. After the corporation had been organized, and a part of the turnpike, which was the subject-of the subscription, had been purchased and built, at the invitation of a person not employed by the corporation, or having no authority to engage in their behalf, Collins was induced to subscribe, upon a particular representation made to him, as to what would be the effect of his engagement, and the amount of the assessments to which he would become liable. But before this proposal, as it might be called, on the part of Collins, was accepted by the corporation, he thought fit to declare off; and he finally refused to take any certificates of shares, or to pay any assessments.
In the argument for the defendant, in the case at bar, [ * 335 ] it *has been attempted to show the same defects of consideration and mutuality as in Collins’s case. It is urged that the writing subscribed by the defendant is expressed as an engagement to an individual not authorized by the corporation to procure subscriptions in their behalf, and that, in fact, when the writing was made and signed by the defendant, the charter of incorporation had not been accepted; there had been no meeting of the proprietors, and no organization under the act; and it is argued that their subsequent assent and acceptance of this engagement, as no rights or advantages were thereby derived to Whiting, are not to have the effect of concluding him upon his subscription ; which, when made, had no other operation than a proposal to become a subscriber upon the terms stated, but which, not being then accepted, it was competent for him afterwards to rescind.
This defence is not, we think, justified by the state of the facts, *333 as we consider it established by the verdict, and by the report of the evidence. Considering the direction by which the jury were governed in finding a verdict for the plaintiffs, we must understand, as conclusively proved at the trial, that the corporation adopted and ratified the proceedings of Gilmore, and accepted the subscriptions procured by him as obtained in their behalf; and, in consequence thereof, delivered to the defendant, and the other subscribers in that writing, their certificates of shares; which the defendant, as well as the others, received of the corporation. We have, therefore, in the case at bar, besides the subscription, the subsequent ratification of the contract, not only on the part of the corporation, but on the part of the defendant, also, who, after the corporation had assented to his proposal, if in that light his subscription is to be regarded, received of them the evidence of his title to four shares, upon the terms he himself had proposed. Thus, then, the contract was completed by the mutual consent of the parties concerned.
* Perhaps even this is suspending the completion of [ * 336 J the contract longer than is necessary, upon the whole state of the evidence. For it appears that, at the first meeting of the proprietors, on the 9th of August, when they accepted their charter, and organized themselves under it, the defendant being one of them, Gilmore, the witness, was authorized to procure subscriptions in the form and upon the terms, — this of a personal liability particularly,— recommended by the defendant. And then it was that the defendant produced and delivered at the meeting, and placed with the records of the proprietors, the writing which he had formed and subscribed with others, as a compact with the corporation. Admit, then, that the hand-writing on the paper preceded the meeting, yet the delivery and acceptance of it, which is the date of its legal operation, to the time to which the words written are to be understood to relate, was subsequent to the organization of the proprietors; and then, if not before, Gilmore, the name used in the subscription, was recognized as their agent, acting in their behalf. The law will so arrange acts, performed in one day, and relating to the same subject matter, as to render them conformable to the intentions of the parties, without regarding which was, in fact, first produced or executed. (8)
As to the use of Gilmore’s name in the writing subscribed by the defendant, the decision in the action brought in his name as plaintiff against one of the subscribers, (9) is an authority in point. The defendant in that action objected to it, because he was sued in Gib more’s name, upon a contract made, in effect, with the corporat ion ; *334 and the objection prevailed. Gilmore was but an agent; and the contract must be construed as made immediately with his employers This decision, then, is an answer to the reversed objection now urged, (a)

Judgment according to the verdict.

ADDITIONAL NOTE.
[In case of an incorporated joint stock association (in Nero York) the members of which by the articles promise to pay the amount of stock by them severally subscribed, in calls to be made by certain trustees ; such promise may be enforced at law, though both plaintiffs and defendants are members, and therefore partners. — Townsend vs, Goewey, 19 Wend. 424.
In Massachusetts, Slat. 1808, c. 65, provided, that no manufacturing corporation should maintain an action against a stockholder or his executor for assessments. Hence, a claim for such assessments could not be offset against a debt due from the company to the stockholder, in a suit by his executor. — Cutler vs. Middlesex, &c. 14 Pick. 483. — F. H.]

 Chitty on Pleading, 334

 5 Mass. Rep. 80.

 8 Mass. Rep. 292.

 Cro. Eliz. 862

 Gilmore vs. Pope, 5 Mass. Rep. 491.

 [See Union Turnpike vs. Jenkins, 1 Caines's Cas. Er. 86; 1 C. R. 381. — Goshen Turnpike Company vs. Hustin, 9 Johns. Rep. 217. — Highland Turnpike Company vs. M'Kean, 11 Johns. 86.— Colton Manufacturing Company vs. Davis, 14 Johns. 238. — President, &c., of Delaware and Schuylkill Navigation vs. Sanson, 1 Bin. 70.—Gilmore vs. Pope, 5 Mass. Rep. 491.— Worcester Turnpike vs. Willard, 5 Mass. Rep. 80.— Chester Glass Company vs. Dewey, 16 Mass. Rep. 94. — Trustees of Framingham Academy vs. Allen, 14 Mass. Rep. 172. — Howes & Al. vs. Dana, 12 Mass. Rep. 192. — Bryant vs. Goodnow, 5 Pick. 228. — The declaration in the principal case, as set forth in the report, appears to be informal, if not fatally defective. It does not appear that the corporation assented to the transaction, or admitted the defendant to become a member, or a proprietor of shares, or in any way became parties to the agreement; or that there was any sufficient consideration for the defendant’s promise. —See Essex Turnpike Corporation vs. Collins, 8 Mass. Rep. 292. — Trustees of Phillips Limerick Academy vs. Davis, 11 Mass. Rep. 113. — Ed.]