Morton v. Timken.

STATE, EX REL. ROBERT MORTON ET AL., v. HERMAN L. TIMKEN ET AL.

1. The subscribers to the capital stock of a telegraph company, upon payment of $8.33 per share, caused to be issued to themselves shares of full-paid stock of the par value of $25 each. At the same meeting of stockholders, it was resolved that one hundred and fifty shares of the stock be issued to the relators for services alleged to have been rendered by them to the company, without any account or statement of the amount due relators. In such case the presumption is that full-paid stock was to be issued upon payment of only $8.33 per share. To the enforcement of a contract thus tainted with illegality this court will not lend its sanction.

2. The relators have adequate remedy by suit for damages, and are not entitled to *mandamus* if the contract was unexceptionable in its character.

On application for a *mandamus*.

Argued at November Term, 1885, before Justices VAN SYCKEL and DIXON.

For the plaintiffs, *Charles H. Voorhis.*

For the defendants, *J. C. Besson.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is an application for a *mandamus* to the president, treasurer and secretary of the American District Telegraph Company of Hoboken, to issue one hundred and fifty shares of the capital stock of said company to the relators.

At a meeting of the stockholders of the company, held August 28th, 1884, the following resolutions were passed :

*Resolved,* That in consideration of valuable services, and in further consideration of the sum of $8.33 per share, to be paid by said incorporators and subscribers, certificates of stock of this company, of the par value of $25 each, be issued to each of said incorporators and subscribers to date, each

share of said stock to be full paid and unassessable, and to be endorsed for property purchased.

*Whereas,* Horace H. Farrier, Theo. L. Parker, Robert Morton and J. C. Chamberlin have devoted a great deal of labor and expense in organizing and obtaining valuable franchises for this company; *and whereas,* it is fitting and proper that the above-named parties should be compensated; therefore,

*Resolved,* That one hundred and fifty shares of the stock of this company be and are hereby directed to be issued and delivered to them for their services aforesaid, the said stock to be full paid and unassessable, for property purchased.

The relators base their application upon the latter resolution.

In the first place the action sought to be enforced is not free from a taint of illegality, if not of fraud.

The subscribers paid only $8.33 per share for the stock, and yet, by the first resolution, certificates of the par value of $25 each were to be issued to them, each share to be full paid and unassessable, and to be endorsed for property purchased.

Thus these certificates of stock were to contain the false assertion that $25 for each share had been paid by the incorporator by the transfer of property to the company.

The effect of this would be, if the real transaction was not exposed, to shield the stockholders from further assessment on their shares, if it subsequently became necessary, to satisfy the claims of creditors.

The second resolution declares that the relators had rendered the company valuable services, for which they should be paid, but there is nothing to show that an account had been stated between them, or that the relators had a claim equal to the sum which would represent one hundred and fifty shares of stock at par.

The resolution, without specifying the amount due to the relators, directs a certificate for one hundred and fifty shares of the capital stock to be issued to them, to be endorsed like the other shares, full paid and unassessable for property purchased.

I think the fair presumption from this action of the stockholders is that the indebtedness to the relators did not exceed

the value of one hundred and fifty shares, estimated at $8.33 per share.

At all events the transaction is not so free from the appearance of wrong that the court should lend its sanction to the consummation of it.

Aside from this objection the relators have an adequate remedy in a suit for damages, and are not entitled to a writ of *mandamus* in such case. *Goldbraith* v. *Building Association,* 14 *Vroom* 389.

The *mandamus* is refused.