# Bell's Appeal.

1. The Statute of Limitations begins to run against a subscription to the stock of an intended corporation from the date of its incorporation. The running of the statute is barred in such case by the filing of a bill in equity against the stockholder praying for a decree compelling the payment of the unpaid stock in discharge of the claims of creditors. Bringing a stockholder in to such bill by amendment has the same effect.

2. One who subscribes to the stock of a company in view of and for the purpose of its organization and incorporation which is afterwards effected, and pays for one share of the stock thus subscribed for and transfers the other share thus subscribed for, thereby recognizes and affirms his contract of subscription and is estopped from denying it.

3. The obligation on part of a stockholder to pay his stock is not a statutory obligation but an obligation in equity arising out of the consideration that the capital stock of a corporation is a trust fund for the payment of its debts. Only so much of the unpaid capital as is necessary for the payment of the debts can be called in, and this can only be done when all other assets are exhausted.

4. Before a decree can be made for the payment of the capital stock of a corporation there must be an account taken of the amount of debts,

assets and unpaid captal stock of the corporation.   The decree must be for the amount due by each stockholder.

5. Lane's Appeal, 9 Outerbridge, 49, approved.

6. Subject to exceptional instances depending on special provisions in particular charters and in cases subject to the general railroad law of February 19th, 1849, the obligation to make good the unpaid portions of capital stock when the necessities of creditors require it, is a charge upon the stock which passes with it to the holder of it.

7. The liability of one as owner of stock in a corporation is not discharged by an *ex parte* transfer in writing not entered upon the books of the corporation or recognized by the corporation, with a private agreement of the transferee that the transferer should not be liable for the payment of the same.

November 17th, 1886.   Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   MERCUR, C. J., absent.

APPEAL from the Court of Common Pleas, No. 2, of *Allegheny county*: Of October Term, 1886, No. 145.

Appeal by Thompson Bell from the decree of said court dismissing his exceptions to the Master's report, and adjudging him to be a delinquent stockholder of the Bellevue Cemetery, and ordering him to pay the sum of $6,786 on his stock in said company.

The bill in equity in this case was filed March 13th, 1878, by Irene McClintock, a judgment creditor of the Bellevue Cemetery, against said company and certain subscribers to the stock of said company, (Thompson Bell and other subscribers to the stock of said company were afterward brought in by amendment, February 26th, 1879,) in her own behalf and in behalf of such other creditors of the said company as might thereafter become parties to the bill.   The facts of the case sufficiently appear in the opinion of the Supreme Court.

H. S. Floyd, Esq., was appointed examiner and Master, who made report to the court.   Exceptions were filed to said report, which were dismissed by the court, WHITE, J., and a decree entered, *inter alia*, adjudging the said Thompson Bell a stockholder of said company, that he was in default in payment on his stock subscriptions, and that he pay to the receiver of said company the sum of $6,786 for the use of the creditors of said company.   Thompson Bell thereupon took this appeal, raising, by his assignments of error, for the determination of the Supreme Court, the grounds of his defence in the court below, viz:

*First.* That he never subscribed to this corporation.

*Second.* That the shares which stood in his name had no existence in law, and that as soon as the company was organ-

ized he assigned four shares to persons who either paid for them or were amply responsible therefor.

*Third.* That the company, after organization, had ratified and confirmed the transfer by collecting the subscription from Lee, and making claim against the estate of Wm. Dilworth, Jr., in bankruptcy, for the one share transferred to him.

*Fourth.* That no demand for payment was made within six years of the alleged subscription. The testimony, as reported by the Master, is meagre, not in full, omitting the most important and material matters in evidence.

*Thomas M. Marshall* and *A. M. Imbrie*, for appellant.

*C. C. Dickey*, (*Welty McCullough* with him), for appellees.— The case was submitted without argument.

Mr. Justice GREEN delivered the opinion of the court, January 3d, 1887.

GREEN, J. The bill in this case was a creditor's bill, originally filed by one creditor of a corporation alleged to be insolvent, against several of the stockholders, for the purpose of compelling the payment of the unpaid capital stock in discharge of the claims of creditors. The bill set forth the debt of the plaintiff and contained also a general allegation that there were other debts to the amount of $30,000 without naming the creditors or the separate amounts due them. Subsequently certain other persons claiming to be creditors were allowed to intervene by petition. The Master without making any report as to these latter claims, found that the appellant, who was brought in by amendment, was indebted for unpaid capital upon one share to the extent of four thousand dollars, with interest from November 1st, 1875. He, however, did not report any form of decree, nor did he report as to any other debt except that of the plaintiff, which he found to be $3,169.81 with interest. The appellant resisted the plaintiff's claim upon three grounds, one of which was the statute of limitations. It appears, however, that the amendment by which he was brought in was filed in February, 1879, which, as the date of incorporation was June, 1883, was within six years of the time when the cause of action arose. It is alleged that Bell filed no answer till April, 1880, which was seven years after the subscription, and that no notice of the amendment was served upon him. He, however, entered an appearance and made defense, which was a waiver of notice. But the statute ceased to run from the time of the amendment, on the same principle as the bringing of an action stops the running of the statute.

Hemphill *v.* Climans, 12 Harr., 367; McClure *v.* McClure, 1 Grant, 222. The plea of the statute, therefore, is no defence in this case. It was also urged that the corporation did not exist at the time of the subscription. But the subscription was made in view of, and for the purpose of, a subsequent organization which actually was had, and the appellant thereafter paid in full for one share and transferred other shares, and thereby recognized and affirmed his contract of subscription and can not now be heard to disaffirm it. It was further alleged that Bell had assigned the four shares which he did not pay for, and therefore was not liable. The Master found that as to three of these the assignee had paid the whole amount in full, and as to the fourth that there was no proof of assignment except an informal ex parte transfer in writing, never entered or appearing on the books of the company, and a private agreement of the transferee that Bell should not be liable for anything due on the five shares. This of course could not relieve Bell from his liability if it existed otherwise. It does not appear that any certificate was ever issued to the assignee for the share attempted to be transferred, or that the transfer was recognized by the company in any way. As there does not seem to have been any actual, *bona fide,* completed assignment of this share, Bell's liability as owner of it would not be discharged. These several defences therefore are inadequate.

There remains, however, the fifth assignment of error which raises the question whether upon the whole record a decree can be entered against the appellant. An examination of the Master's report discloses imperfections and defects of so serious a character as that it is impossible to found any decree upon it. A part of these were corrected by the court below, but fatal defects still remain. Only one debt is ascertained by the Master, and that is the debt due the appellee, which he fixes at $3,169.81. Yet a decree has been entered for the payment of various sums by different stockholders aggregating $35.324. The amount decreed to be paid by the appellant alone is $6,786, which is more than double the amount required to pay the only debt which is found by the Master. In the opinion of the court, attention is called to some of the defects in the report, and reference is made to certain agreements of facts by counsel as supplementary to the report. The agreements are not printed and we do not know what they contain except as recited in the opinion, and as so recited they seem to relate only to a question of set-off interposed by one of the defendants. The court also states some few additional facts in relation to the history of the company, the amount of its capital stock, the amount of bonds given, the subscription of

Heath & Spear, the sale of the property, and incidentally it is said there were $70,000 of unpaid bonds. But all these facts are introduced only to affect the question of the set-off of Heath & Speer. There is no ascertainment of any actual specific debts, no designation of creditors, no adjudication upon the claims of the intervening creditors, no determination that the whole unpaid capital is needed for the payment of debts, nor how much of the capital remained unpaid, nor by whom it was owing. Yet all these things are indispensable to the making of a correct and valid decree.

This is a proceeding to enforce the equitable obligation of stockholders in an insolvent corporation to pay the unpaid portions of the capital stock due by them, in order that the debts, all the debts, of the corporation, may be paid to the extent of such unpaid capital. It is not a statutory obligation at all, but an obligation in equity arising out of the consideration that the capital stock of a corporation is a trust fund for the payment of its debts. Only so much of the unpaid capital as is necessary for the payment of the debts can be called in, and this can only be done when all the other assets are exhausted. It is manifest, therefore, that in a case of this kind there must be an account taken of the amount of debts, assets and unpaid capital, and a decree for an assessment of the amount due by each stockholder. All of this is pointed out in the opinion of this court in the case of Lane's Appeal, 9 Out., 49, and had the method of proceeding there indicated been followed in this case, there would have been no difficulty in reaching correct results. As it is, the present record is defective in nearly all material particulars, and the decree must be reversed, but, as the proceeding and parties are proper, only with directions to the court below to refer the matter back to the former, or another, Master, to perfect the report and take such additional testimony as may be necessary for that purpose. The case of Messersmith v. Sharon Savings Bank, 15 Nor., 440, cited and relied upon in the Master's report, must not be understood as a decision that the transferee of stock in a corporation which has become insolvent is not liable for the payment of the unpaid portion of the shares held by him when the unpaid capital is required for the payment of the debts of the corporation. That case did not involve that question. It was an ordinary common law action of debt directly upon the subscription contract and the original subscriber was held bound to pay, because he had contracted to pay, the whole subscription price of the stock. The court below held that a transferee in good faith and upon an agreement to pay subsequent calls was not bound to pay them, and a single remark in the opinion of this court seems to counte-

nance that idea. It is true that such is the law as declared in several decisions of this court, but they were decisions arising upon charters, or by-laws, providing for only a particular remedy in case of non-payment of instalments, such as the forfeiture and sale of the stock itself in case of default, as was the case in Franks Oil Co. *v.* McCleary, 13 P. F. S., 317, and Palmer *v.* Ridge Mining Co., 10 Cas., 288, or that the company has no right of action against the transferee and no remedy against him except a forfeiture of the shares as was the case in the President, etc. *v.* Sansom, 1 Binn., 70, and 10 Cas., 288, *supra*.

There is also another class of cases in which the same rule as to liability of original stockholders is held notwithstanding they have transferred their shares. They are cases of subscriptions to the stock of railroad companies subject to the general railroad law of Feb. 19th, 1849, the seventh section of which provides that no transfer shall have the effect of discharging any liabilities incurred by the owners thereof. Some of these cases are the following: Pittsb. & Connelsville R. R. Co. *v.* Clarke, 5 Cas., 146 ; Graff *v.* Pittsb. & Steubenville R. R. Co., 7 Cas., 489 ; Hays *v.* Same, 2 Nor., 81 ; Cass *v.* R. R. Co., 30 P. F. S., 31. Subject to such exceptional instances as these, it cannot be doubted that the obligation to make good the unpaid portions of capital stock when the necessities of creditors require it is a charge upon the stock which passes with it to the holders of it. It is an equitable obligation founded upon no statute and rests upon those who are the owners of the stock at the time of insolvency. If this were not so, the creditors of a corporation, which had been in existence for many years and whose original subscribers were dead and gone long before the insolvency of the company occurred, would be deprived of all resource to the unpaid capital stock at the very time when alone they needed it. The doctrine is thus stated in Ang. & Ames on Corporations, § 534: "When an original subscriber to the stock of an incorporated company, who is bound to pay the instalments on his subscription from time to time as they are called in by the company, transfers his stock to another person, such other person is substituted not only to the rights but to the obligations of the original subscriber, and *he* is bound to pay up the instalments called for after the transfer to him. The liability to pay up instalments is shifted from the outgoing to the incoming shareholder," citing numerous authorities. The same doctrine was held and enforced in Webster *v.* Upton's Assignee, 1 Otto, 65. The very question of that case was the liability of a transferee of stock for calls made after his acceptance as a stockholder by the company, upon an implied promise that he would pay calls made

during his ownership. Mr. Justice Strong in delivering the opinion of the court reviews the whole subject of the liability of both the original subscriber and the transferee. After showing the liability of the original subscriber by a promise which the law implies to pay calls which he has never expressly agreed to pay, he says: "But if the law implies a promise by the original holders or subscribers to pay the full par value when it may be called, it follows that an assignee of the stock, when he has come into priority with the company by having stock transferred to him on the company's books, is equally liable. The same reasons exist for implying a promise by him as exist for raising up a promise by his assignor. And such is the law as laid down by the text writers generally and by many decisions of the courts (citing several cases). There are a very few cases, it must be admitted, in which it has been held that the purchaser of stock, partially paid, is not liable for calls made after his purchase. Those to which we have been referred are Canal Co. *v.* Sanson, 1 Binn., 70, where the question seems hardly to have been considered, the claim upon the transferee having been abandoned; and Palmer *v.* Ridge Mining Co., 34 Penn. St., 288, which is rested upon Sansom's case, and upon the fact that by the charter the company was authorized to forfeit the stock for non-payment of calls. We are also referred to Seymour *v.* Sturgess, 26 N. Y., 134, the circumstances of which were very peculiar. In neither of these cases was it brought to the attention of the court that the stock was a trust fund for the protection of creditors in the first instance, a fund, no part of which either the company or its stockholders was at liberty to withhold. They do not, we think, assert the doctrine which is generally accepted. * * * We think, therefore, the transferee of stock in an incorporated company is liable for calls made after he has been accepted by the company as a stockholder and his name has been registered on the stock books as a corporator; and being thus liable there is an implied promise that he will pay calls made while he continues the owner."

It must also not be forgotten that, as to all corporations formed under the general law of 1874, the seventh section of that Act expressly imposes upon transferees of stock all the liabilities and obligations of original subscribers. What is said upon this subject is cautionary only and intended to guard against any erroneous impressions which might arise out of the generality of expression in the Messersmith case.

We notice that the Master has charged interest upon the amount of unpaid capital found due by appellant from Nov. 1st, 1875. No such claim is made in the bill and there is no testimony printed and no distinct finding of any fact which

necessarily determines the liability for interest. An indistinct reference is made in the report to a last call for instalments on November 1st, 1875, but no facts or testimony appear in relation to the subject. As a large part of the decree is made up of interest the subject should receive a careful consideration.

The decree of the court below is reversed at the cost of the appellee, and the record is remitted with instructions that the case be referred to a Master to take such additional testimony and make such further report as may be necessary to perfect the proceedings.