CLARK v. BEVER, Adm'r, etc.

(*Circuit Court, S. D. Iowa.* June Term, 1887.)

1. CORPORATIONS—UNPAID STOCK—LIABILITY ON.
  A railway corporation was insolvent, and its stock worthless. One G. and his associates, in payment of a debt due them, accepted in good faith by resolution spread on the minutes of the corporation, the unissued stock of the company at 20 cents on the dollar. *Held* that the transaction, being for the benefit of the company, the personal representatives of G. were not liable to a judgment creditor of the insolvent company for the 80 cents remaining unpaid on each dollar of the stock. The rule that an issue of stock by the officers of a corporation to a party, with a stipulation exempting the latter from full payment, is void as against creditors, does not apply to such case, and this notwithstanding that the debt upon which the present suit was brought was contracted subsequent to the stock transaction.[1]

[1] See note at end of case.

2. SAME—CONSTRUCTION OF STATUTE.

Where a strict construction of the Iowa statute prohibiting transfers of corporate stock with attempted exemptions from full payment thereof, enacted for the protection of creditors, will work a positive injury to creditors, a liberal construction, in accordance with its spirit, will be given such statute.[1]

This is an action at law to recover from the personal representatives of George Greene 80 per cent. unpaid upon 910 shares of stock issued to him by the Burlington, Cedar Rapids & Minnesota Railway Company. The amount claimed is the sum of $65,523 20, with interest. It seems that George Greene was a stockholder of said company, and also a member of a construction company by which the work of building had been done. The railway company was indebted to the construction company in the sum of $70,000, without any means of making payment of the same. The railway company was in fact insolvent. Its earnings were insufficient to pay the interest on its large bonded debt. It had a floating debt of over a half million of dollars which it could not provide for. It is sufficiently evident that the whole corporate property was insufficient to pay the bonded debt secured upon the property, and that the stock of the company had no market value. Under these circumstances, the railway company entered into an arrangement with George Greene and his associates, by which the company issued to them its stock at the rate of 20 cents on the dollar, in full payment and discharge of the debt of $70,000, which they held against the company. The stock was to be received as full paid. The shares of stock were $100 each, and George Greene received his proportion, amounting to 910 shares. It is to recover the unpaid $80 on each of these shares of stock, to be applied on the plaintiff's judgment, that the plaintiff, a creditor of the company, brings this action.

It appears that George Greene and his associates received the stock reluctantly, and with the hope by its means of raising the company from its crippled condition of insolvency. With this view they transferred the stock for a nominal consideration to John I. Blair, a large capitalist, by whom it was retransferred to his assignors upon finding that the task of getting the railroad company out of its difficulties was hopeless. The plaintiff, having recovered a judgment in a state court of Iowa against the railway company, and having caused execution to issue upon the same, which was returned *nulla bona,* now prosecutes this suit for the purpose stated. A jury was called *pro forma,* but the case was tried practically before the court upon facts not disputed by the parties, and upon pure questions of law. The jury were directed by the court to enter a verdict for the defendant upon the admitted facts.

*P. Henry Smythe* and *Joseph Anderson,* for plaintiff.
*Charles A. Clark,* for defendant.

LOVE, J. Whoever, in my opinion, takes the stock of a *solvent* corporation, must receive it *cum onere.* He proposes to become a member of

[1] See note at end of case.

the corporation, and to participate in its rights, profits, and benefits on equal terms with other stockholders, in proportion to his stock, and he cannot take these advantages without assuming the burdens of the corporation in like proportion to the amount of his stock. This may not be true, indeed, I think it is not true, of the case of an insolvent corporation which is in the course of settlement or liquidation. I cannot see that the creditors of a solvent corporation, the assets of which are entirely adequate to the satisfaction of their claims, have any interest in compelling a particular stockholder to pay up his stock in full; but it is surely otherwise, as I will presently show, with the full-paying stockholders themselves.

These principles may be best illustrated by considering the relations which the taking of stock creates. The stockholder assumes a three-fold relation: (1) to the corporation itself; (2) to the creditors of the company; (3) to the other stockholders.

To the creditors he becomes a debtor to the amount of his unpaid stock, when the company becomes insolvent, and fails to pay its debts. To the other stockholders he assumes the relation of a *quasi* partner, in that he participates in the profits and advantages of the 'corporation, and takes its burdens to the extent of his unpaid stock. To the corporation itself he is bound by the contract by which he owns the stock which has been issued to him. He is a debtor to the corporation to the amount of his unpaid stock. What is the nature of the contract which the taking of stock in a corporation creates? What relations does it establish between the shareholder and the other stockholders, and also to the creditors and the corporation?

The taking and receiving of stock is a contract founded upon certain considerations to the stockholder. It is not a gift to him. By the taking of the stock he becomes a member of the body corporate. He has a right to vote upon his stock. He entitles himself to his share of the profits, if any, and to the property of the corporation upon the final distribution in proportion to his holding of stock. Such are the considerations flowing to the stockholder. And what are his undertakings in consideration of the rights and interests thus secured? His undertaking is to pay for the stock. Can a stockholder, by agreement with the corporation issuing the stock, lawfully stipulate that he shall pay less than the face value of the same,—say 10 or 20 cents on the dollar? It is manifest that the law will not permit any party to make a contract which necessarily works a fraud upon the rights of other parties. Now, if all the subscribers and takers of stock should be allowed, by contract with the company, to pay less than the face value of the stock, a fraud upon the creditors, in case of insolvency, would be the unavoidable result. Creditors, in dealing with the corporation, look to its means of payment, which is in part its capital stock, and its earnings. The stockholders are members of the corporation. They authorize the corporation, which is organized for their benefit and profit, to hold them forth to the world as contributors, to the respective amounts of their stock, to the assets and capital of the corporation. They thus give the corporation

credit. They also take its earnings, in proportion to their shares, in the form of dividends. They receive these dividends in proportion to the full amount of their shares, and not upon any reduced basis founded upon their contract to pay into the corporation less than the face value. These earnings and dividends, if not received by the shareholders, could be applied to the satisfaction of the claims of creditors.

To permit stockholders to pay 10 or 20 per cent. on their stock, and receive dividends on it at the rate of 100 per cent., would work manifest injustice to creditors. To permit the stockholders and the corporation to hold the stockholders out to the world as responsible for $100 upon each share of stock, and, by a private agreement between the corporation and the shareholders, to allow the latter to pay only ten or twenty dollars on each share, would work manifest fraud upon the creditors of the corporation. Hence the law would not permit such a contract between the company and the shareholders. It is equally clear that it would work wrong and injury, *pro tanto*, to creditors, in case of insolvency, to permit any one stockholder to receive dividends upon full stock, and pay only a small per cent. upon it into the treasury of the company. If there is anything fundamental, respecting both corporations and private partnerships, it is that creditors have a right to satisfaction before any member of the firm or corporation is entitled to appropriate the earnings or profits.

But supposing that creditors should have no right to complain, assuming that the assets of the corporation should be sufficient to pay all debts,—we must still consider the relation of stockholders to one another, and the results that would flow from a rule permitting the corporation to issue stock to particular persons at less than the face of the stock. Of course, the original subscribers of stock, and all others not exempt by contract with the corporation from full payment, would be compelled to pay dollar for dollar of their stock; for such would be the contract involved in their subscription to the capital stock. This might result in the grossest inequality and injustice between different classes of stockholders. While one class would be required to pay only perhaps 10 or 20 cents on the dollar, and another dollar for dollar, all would participate equally in the profits and dividends, and in the final distribution of the corporate property. In case of insolvency, one set of stockholders might be compelled to pay in, for the benefit of creditors, 100 cents on the dollar, and another favored class only perhaps 10 or 20 cents on the dollar. I am not, therefore, able to see how a solvent corporation could, without the consent of the stockholders, lawfully issue stock to other parties exonerated from the payment of its full face value. The president and directors are but trustees for the creditors and stockholders, and, as such, they must, in the absence of express law, do what justice and equity require; and equity certainly requires equality of both benefits and burdens among stockholders.

But the question before the court in the present case is whether or not the principle in question is of universal application. Does the doctrine that the president and directors of a corporation cannot lawfully issue

stock exonerated from full payment, apply to all possible cases? Does it apply at all to a corporation in a state of insolvency, using its stock, without other means of payment, to satisfy and discharge the debt of a particular creditor? The supreme court of Iowa have, in a majority opinion in the case of *Jackson* v. *Traer*, 64 Iowa, 469, 20 N. W. Rep. 764, as I understand their judgment, laid down the broad and sweeping doctrine that it is absolutely illegal for the president and directors of a corporation to issue stock to any party with a stipulation exempting the stockholder from full payment of the stock, so far as creditors are concerned. Such a stipulation is simply void. The stockholder is bound to pay up the full face value of the stock, notwithstanding the agreement of the corporation with him to the contrary. The general principles laid down, and strongly enforced in the majority opinion, stand, no doubt, upon impregnable ground. They are stated with marked ability and fullness in that opinion. But I incline to think the majority were in error in applying the principle to the case then before them, which, indeed, was the very case now before the court. I am of opinion that there may be some exceptions in the application of that principle, just and most salutary as it undoubtedly is; and that the case before us is one of those exceptions.

What are the grounds and reasons of the doctrine that a stockholder cannot, by contract with the corporation, be exempt from the full payment of his stock? The sole reason and basis of the principle is that the capital stock, in common with the other property of a corporation, is a trust fund primarily for the satisfaction of its debts, and subject to the rights of creditors for the benefit of shareholders. Now, suppose it could be shown, in any given case, that an issue of stock by the company, with the right to the stockholder of partial payment, would prove a benefit rather than an injury to both creditors and shareholders, what reason would there be to apply the principle in question to such a case? Of course, the burden of showing the beneficial character of such a transaction to creditors and shareholders would rest upon the holder of the stock. Suppose a creditor of an insolvent corporation should see fit, for any reason satisfactory to himself, to receive the worthless stock of the corporation as paid up stock, at 20 cents on the dollar, in full satisfaction of his debt, what possible injury could accrue to other creditors and stockholders? Would such a transaction not prove an absolute benefit to them? In the first place, such stock, in the possession of the company unissued, would be of no value whatever to creditors. It would produce nothing, and pay nothing. It would seem, therefore, that the payment of a debt by the issue of such worthless stock would be no possible injury to other creditors. On the contrary, it would seem to be a positive advantage to the other creditors to have a particular debt discharged by stock of no value, because the creditor so receiving the stock would have no right to claim *pro rata* payment out of the assets of the insolvent corporation. As to the stockholders of the corporation, how would they be injured by such a transaction? The corporation being insolvent, and its assets, including, of course, the capital stock, fully paid up, being insufficient to

pay the debts, there would be nothing left for the stockholders. Their stock would be worthless. It could not be made less valuable by the payment of a particular debt with newly-issued stock. They would not be affected, one way or the other, by the transaction, since they would be compelled to pay their stock up fully for the benefit of the creditors, and nothing more could, in any event, be required of them.

The very case before the court presents an example illustrative of what I have just said. The railway company was insolvent. Its stock issued and unissued was worthless, but George Greene and his associates, for reasons peculiar to themselves,—reasons which would have influenced the conduct of no one else,—accepted the unissued stock of the company at 20 cents on the dollar, in payment of a debt of $70,000. If there was anything left in the corporation to be paid *pro rata* on its debts, the transaction was a positive benefit to the creditors holding such debts. It is safe to say that if Greene and his associates had known or believed the law to be such as to require them to pay 80 cents on the dollar upon the stock which they received, they never would have taken it. It would have remained unissued, without value, to creditors, in the possession of the corporation; and the debt of $70,000 would have remained to be paid *pro rata* with the other debts; and, as to the other stockholders of the insolvent corporation, I do not see how they could have been affected one way or the other by the transaction.

It seems to be a fair inference, from the facts that George Greene, who was a member of both corporations, entertained a hope that by taking the stock in question, and transferring it to John I. Blair, the corporation could be restored to solvency, and placed once more upon its feet. In this he failed, and the stock was returned to him by John I. Blair. But, if Greene had succeeded in this, the result would have proved highly beneficial to both the creditors and stockholders of the corporation. As, however, Greene failed in accomplishing his purpose, the stock which he received must have proved worthless in his hands, while the debt of $70,000 was wiped out.

It is argued, against this view, that the debt upon which the present suit is founded was contracted subsequent to the transaction between Greene and the corporation, and that the reasoning of the court cannot be sound when applied to the plaintiff in this case. This argument has been urged with singular plausibility and force, but I cannot regard it as conclusive. If the transaction between George Greene and the corporation was at the time beneficial to the creditors then existing, and if it was therefore legitimate, I am not able to see how it could be rendered invalid by debts subsequently contracted. The issue of the stock to George Greene and his associates was not a secret transaction. It was open and public. The resolution authorizing it was spread upon the records of the corporation. The new creditor, taking the company's bonds, if he opened his eyes, must have seen that the stock issued to George Greene was delivered to him as paid-up stock. If the new creditor looked beyond the surface of the transaction, we are bound, in our own view, to hold that he discovered that the transaction was entered

into in good faith; that it was beneficial to then existing creditors of the insolvent corporation; and that it was therefore legitimate and unimpeachable. We must assume that the new creditor took the obligations of the corporation with notice, and full view of these facts.

Again, it is urged that the Iowa statute law positively prohibited the transaction in question, so far as it was attempted to exempt the stock from full payment. But we answer that the statute must receive a reasonable construction; that its sole purpose was the protection of corporate creditors; that in the present case it would have worked positive injury to the creditors of the insolvent corporation to have given the Iowa statute the strict and rigid construction now claimed for it; that such a construction, applied to the case in question, would have defeated the very purpose and policy of the statute; and that such could not, therefore, have been the intention of the legislature in passing the law.

## NOTE.

CORPORATIONS—UNPAID STOCK. The acceptance of a certificate of stock not fully and actually paid up, *ipso facto* obligates the holder to make up its par value, if the duty of the corporation to its creditors requires it, McKim v. Glenn, (Md.) 8 Atl. Rep. 130; Glenn v. Scott, 28 Fed. Rep. 804; Holmes v. Sherwood, 16 Fed. Rep. 725; Flinn v. Bagley, 7 Fed. Rep. 785; Jackson v. Traer, (Iowa,) 20 N. W. Rep. 764; Lee v. Granger Market Co., (Or.) 11 Pac. Rep. 270; although he originally agreed to take the stock as fully paid up, Flinn v. Bagley, *supra*; Jackson v. Traer, *supra*.

No subsequent release of the original contract or subscription, by the corporation, will avail against the claims of creditors. Flinn v. Bagley, 7 Fed. Rep. 785. An assignment to a corporation, by a subscriber to the capital stock, of part of his shares, in payment of an assessment, and an acceptance of such transfer by the board of directors, are *ultra vires*, and void as against a trustee of the company under a deed of assignment for the benefit of corporate creditors. Glenn v. Scott, 28 Fed. Rep. 804. Any secret arrangement between the corporation and its stockholders, by which the responsibility of the latter is made less than it appears to be, is void as against creditors. Thompson v. Reno Sav. Bank, (Nev.) 7 Pac. Rep. 68.

It is immaterial whether stock was to be paid for in money or by conveyance of property, as the subscriber is, in any event, liable to the creditors of the corporation, under Code Iowa, § 1082, to the extent of his subscription. Chisholm v. Forny, (Iowa,) 21 N. W. Rep. 664; Singer v. Given, (Iowa,) 15 N. W. Rep. 858. Stockholders who pay for their stock by the transfer of a worthless patent, remain liable to creditors. Chisholm v. Forny, *supra*. Under the laws of *Wisconsin*, prohibiting the issue of stock unless fully paid, either in money, or in labor or property estimated at its true money value, a contract pursuant to which a party was to pay for stock at 50 cents on the dollar, and be appointed general manager of the company, at a salary of $2,000 a year, is void. Clarke v. Lincoln Lumber Co., 18 N. W. Rep. 492. Where of the whole $500,-000 of capital the stockholders paid in $1,000 in cash, and $10,000 in land, a *prima facie* case is made, leaving the stockholders liable for judgments upon indebtedness contracted during their respective holdings, if the proceedings were commenced and the judgment obtained within the time limited by the statute. Grindle v. Stone, (Me.) 3 Atl. Rep. 183.

It has been held that a corporation free from indebtedness has the power to issue fully paid up stock to its stockholders in consideration of partly paid stock, and the surrender of accumulated profits, and that neither the corporation nor its subsequent creditors with notice can disturb such arrangement. In re State Ins. Co., 14 Fed. Rep. 28; Coit v. North Carolina G. A. Co., 14 Fed. Rep. 12; Kenton Furnace R. & Manuf'g Co. v. McAlpin, 5 Fed. Rep. 737. But as to debts existing at the time of that arrangement, it would be void; and would not bar an action at law by the corporation against the stockholders to recover the unpaid 50 per cent. of their subscriptions. Kenton Furnace R. & Manuf'g Co. v. McAlpin, 5 Fed. Rep. 737; In re State Ins. Co., 14 Fed. Rep. 28. Where a corporation was embarrassed, and, for the purpose of raising funds, agreed to sell additional stock at what was then the market value of the original stock, *held*, that the assignee in bankruptcy could compel the payment of the difference between such market value and the par value. Flinn v. Bagley, 7 Fed. Rep. 785. The Burlington, Cedar Rapids & Minnesota Railway Company, being indebted to a construction company on a contract under which it had constructed the road, as a compromise of the claim

transferred to the construction company certain shares of stock, at 20 per cent. of its face value, in full settlement of the claim, and the shares were distributed among the members of the construction company. *Held*, that the members of the construction company could be held liable as stockholders of the railroad company for the unpaid balance of the stock so received. Jackson v. Traer, (Iowa,) 20 N. W. Rep. 764; overruling Louisa Co. Nat. Bank v. Traer, 16 N. W. Rep. 120.

Although the California constitution provides that no corporation shall issue stock, except for money paid, labor done, or property actually received, and all fictitious increase of stock shall be void, an increase of the capital stock of a company, and sale of such stock at the actual market value, for the purpose of enlarging the works and capacity, and supplying an increased quantity of water, is legitimate, authorized, and not a "fictitious" issue. Stein v. Howard, (Cal.) 4 Pac. Rep. 662.

In *California*, a corporation formed for the business of mining, smelting, reducing, refining, and working ores and minerals, etc., may sell, at less than par value, shares of capital stock purporting to be fully paid, and, if there be no fraud, the creditors of the corporation have no recourse, against the purchasers or holders of such stock, for the difference between the par value, and the price at which they were sold. In re South Mountain Con. Min. Co., 14 Fed. Rep. 347, 5 Fed. Rep. 403.

So, also, in *Minnesota*. Ross v. Silver & Copper I. M. Co., 29 N. W. Rep. 591.

A creditor who has obtained a judgment against a corporation, and is unable to realize thereon upon execution, may file a bill in equity against stockholders to subject the unpaid balance due on their subscriptions to the stock of the corporation. Patterson v. Lynde, 1 Sup. Ct. Rep. 432; Bell's Appeal, (Pa.) 8 Atl. Rep. 177; Cornell's Appeal, (Pa.) 6 Atl. Rep. 258; Holmes v. Sherwood, 16 Fed. Rep. 725; Bissit v. Kentucky River Nav. Co., 15 Fed. Rep. 353; Queenan v. Palmer, (Ill.) 7 N. E. Rep. 613; Brundage v. Monumental Silver Min. Co., (Or.) 7 Pac. Rep. 314; Thompson v. Reno Sav. Bank, (Nev.) 7 Pac. Rep. 68. It has been held that no one creditor can sue for himself alone, but, when a stockholder is sued, it must be in a way to put what he pays directly or indirectly into the treasury of the corporation, for distribution according to law, Patterson v. Lynde, 1 Sup. Ct. Rep. 432; and inasmuch as only so much of the unpaid capital as is necessary for the payment of the debts can be called in, and that can be done only when all the other assets are exhausted, an account should be taken of the amount of debts, assets, and unpaid capital, and a decree be made for an assessment of the amount due by each stockholder, Bell's Appeal, (Pa.) 8 Atl. Rep. 177. But it is not a fatal defect that not all creditors are joined as plaintiffs, nor all stockholders as defendants. Cornell's Appeal, *supra*. The creditor may sue for himself and such others as may join. Holmes v. Sherwood, *supra*; Brundage v. Monumental Silver Min. Co., *supra*. Where there are stockholders beyond the jurisdiction, the stockholders sued must look to them for contribution. Holmes v. Sherwood, *supra*. And it is said that, as the obligation of a subscriber to stock of a corporation is several, and not joint, he may be sued by a creditor of the corporation for the amount of his unpaid subscription, and, if he holds himself aggrieved thereby, he must seek his remedy as against the other stockholders in default like himself. Brundage v. Monumental Silver Min. Co., *supra*; Thompson v. Reno Sav. Bank, *supra*. A party who is at once a creditor and a subscriber to the stock of a corporation, must, upon failure of the company, pay up the amount of his unpaid subscription. He can then participate in the fund ratably with the other creditors, Thompson v. Reno Sav. Bank, (Nev.) 7 Pac. Rep. 68; and where it is his judgment which is sought to be enforced, he must contribute *pari passu* with the defendant stockholders towards the liquidation of the demand against the corporation, Bissit v. Kentucky River Nav. Co., 15 Fed. Rep. 353.

But it has also been said that such unpaid subscriptions may be reached by garnishment or attachment. In re Glen Iron-Works, 20 Fed. Rep. 674, 17 Fed. Rep. 324; Faull v. Alaska Gold & Silver Min. Co., 14 Fed. Rep. 657; McKelvoy v. Crockett, (Nev.) 2 Pac. Rep. 386. But until due by the terms of the charter or by-laws, or called in by assessment, or until the insolvency of the corporation, they are only equitable assets, and cannot be reached by an action at law. McKelvey v. Crockett, *supra*.

Respecting when the statute of limitations begins to run against the liability of stockholders, see Franklin Sav. Bank v. Bridges, (Pa.) 8 Atl. Rep. 611; Glenn v. Priest, 28 Fed. Rep. 907, 24 Fed. Rep. 536, 23 Fed. Rep. 695; Glenn v. Saxton, (Cal.) 9 Pac. Rep. 420; First Nat. Bank of Garrettsville v. Greene, (Iowa,) 17 N. W. Rep. 86, 20 N. W. Rep. 754.

See, also, Glenn v. Clabaugh, (Md.) 3 Atl. Rep. 902; Glenn v. Howard, Id. 895; State v. Timken, (N. J.) 2 Atl. Rep. 783; Glenn v. Walker, 27 Fed. Rep. 577.