# Cook *v.* Carpenter (No. 2).   McCord's Appeal.

*Corporations—Transfer of stock—Liability for unpaid stock subscription.*

Where an act under which a corporation is chartered provides that shares shall be transferable on the books of the company "subject to such regulations as the by-laws may prescribe," and the by-laws provide that no transfer shall be made while the books are closed, a stockholder who sells his stock at public auction while the books are closed, and by reason of the closing of the books does not get the stock transferred to the purchaser, the insolvency of the company happening in the meantime, is not relieved from liability for the unpaid amount due on the original subscription to the stock. The principle of the decisions is that the transfer must be complete and in accordance with the by-laws of the corporation to fix the liability of the transferee and release the transferror.

Argued Jan. 11, 1905. Appeal, No. 225, Jan. T., 1904, by James S. McCord, Jr., from decree of C. P. No. 2, Phila. Co., March T., 1899, No. 145, on bill in equity in case of Richard Y. Cook et al., Assignee, v. Richard L. Carpenter et al. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity to collect the unpaid subscriptions to stock of a corporation.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*J. H. Brinton*, for appellant, cited as to the question of transfer: West Phila. Canal Co. v. Innes, 3 Wharton, 198; Finn v. Brown, 142 U. S. 56 (12 Sup. Ct. Repr. 136); Merrimac Mining Co. v. Levy, 54 Pa. 227; National Bank v. Wat-

sontown Bank, 105 U. S. 217; Whitney v. Butler, 118 U. S.
655 (7 Sup. Ct. Repr. 61); Hayes v. Shoemaker, 39 Fed.
Repr. 319; Young v. McKay, 50 Fed. Repr. 394; Webster v.
Upton, 91 U. S. 65; Bank v. Lanier, 78 U. S. 369; Johnston
v Laflin, 103 U. S. 800; Earle v. Carson, 188 U. S. 42 (23
Sup. Ct. Repr. 254); Bank v. Kortright, 22 Wend. 348; Sar-
gent v. Ins. Co., 25 Mass. 90.

*John G. Johnson,* with him *P. F. Rothermel,* for appellees,
cited: Whitney v. Butler, 118 U. S. 655 (7 Sup. Ct. Repr. 61).

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 22, 1905:

This appeal raises the same questions as Cook v. Carpen-
ter, *ante,* p. 165, opinion filed to-day, with the additional
point that at the time of the assignment by the trust com-
pany to the plaintiffs for the benefit of its creditors, the ap-
pellant had sold fifty of the shares charged in the bill of
complaint as held by him and was no longer the owner.

The facts, which are somewhat peculiar, are thus stated by
the learned judge below:  " It appears that these fifty shares
were sold at auction by Barnes & Lofland and that Carpenter
was the buyer and paid for them and that under the rules
they were not deliverable until early in January because the
transfer books of the company were closed after the declara-
tion of the dividend.  The transfer therefore was never actu-
ally made nor did Carpenter, the buyer, ever receive a certifi-
cate so far as the evidence shows."

He also further found that " it was claimed that some or all
of the shares of stock in the name of Herman B. Chambers,
Joseph Louchheim and James S. McCord, Jr., had been as-
signed.  This claim was not established by proof.  There was
no transfer of the shares of either of these persons upon the
books of the company.  They were holders at the time of the
insolvency of the shares respectively hereinafter stated in de-
tail to have been held by them."

If we accept this finding as conclusive of the facts it would
put an end to appellant's case.  But he claims that the finding
is not as full as the facts appeared, and as his contention in
this respect is not disputed, it would seem that he should be
entitled to the benefit of the complete statement.  During the

month of December, 1897, after the books of the company had
been closed for the annual election, but before its insolvency
was known, appellant through his brokers sold fifty shares of
his stock at public auction to one Carpenter. The purchaser
paid the auctioneers and thereupon the latter sent the certifi-
cate of stock, with a blank power of attorney to the trust com-
pany, and a clerk made an entry on the books "transferred
by James S. McCord to Richard L. Carpenter fifty shares
of stock." But later on, apparently the same day, the auc-
tioneers were informed that the books were closed. The trans-
fer was not further recognized and no certificate was issued to
Carpenter, the purchaser, nor any further change made on the
company's books before the insolvency and the assignment for
creditors. The good faith of the sale does not seem to be
questioned.

The act of 1874, under which the company was chartered,
provides that shares shall be transferable on the books of the
company "subject to such regulations as the by-laws may pre-
scribe," and it is admitted that the by-laws of the company pre-
scribed that no transfer should be made while the books were
closed. It is argued by appellant that while this by-law may
prevent the issue of a new certificate to the purchaser as evi-
dence of his title, such certificate is not an indispensable re-
quirement to the change of ownership of the stock, and the cor-
responding rearrangement of rights between the seller and
the buyer.

However this may be as between the parties, it does not reach
the question here which is between the stockholders of record
on the company's books and the company's creditors. The
insolvency of the company fixed the rights of the creditors, and
the company's books are not only recognized in all the cases as
the best evidence of the responsible ownership of the stock at
that time but the tendency is to treat them as conclusive on
that point. Thus in Allibone v. Hager, 46 Pa. 48, the defend-
ants had signed the certificate for the purpose of incorporation,
as subscribers for a certain number of shares. In a suit by a
creditor it was held that it was no defense that they had sub-
scribed for only a portion of the shares in their own right and
for these they had paid up in full, while the subscription to the
remaining shares was as agents for the corporation itself, for

purposes of sale for its benefit. The certificate, said THOMPSON, J., "shows that all the original stock was subscribed by and for the defendants. Whatever might be the law between them and the corporation, as between them and the public the certificate is conclusive." And in Bell's Appeal, 115 Pa. 88, it was said, " it does not appear that any certificate was ever issued to the assignee for the share attempted to be transferred or that the transfer was recognized by the company in any way. As there does not seem to have been any actual bona fide completed assignment of this share Bell's liability as owner of it would not be discharged."

The facts are a little stronger in appellant's favor and the law a little harder upon him than any case brought to our attention. But we do not think the difference is sufficient to invoke a different rule. If the sale and the order to the company to make the transfer had been given while the books were open, we do not say that the mere neglect or even refusal of the company to make the actual entry would have been effective to prevent the release of the appellant. But here the refusal of the company was based upon a by-law, the validity of which is not attacked. The principle of the decisions is that the transfer must be complete and in accordance with the by-laws of the corporation to fix the liability of the transferee and release the transferor. To begin the recognition of irregular or incomplete transfers would be to open the door to contests over colorable or disputed facts and subject the rights of creditors to endless litigation.

The decree is affirmed.