# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

---

## Schmitt, Receiver, Appellant, v. Kulamer.

*Corporations—Stock subscription—Subscription in articles of incorporation—Liability of subscriber—Transfer of right in shares —Consent — Novation — Release — Estoppel — Attorney-at-law — Statements—Burden of proof—Future calls—Act of May 5, 1911, P. L. 126.*

1. In an action to recover for a subscription to the stock of a corporation, where it appears that defendant certified, in the original articles of association of the company, that he had subscribed for twenty shares of stock, the mere fact that he signed the certificate for the purposes of incorporation will not relieve him from liability in so far as the public and creditors are concerned.

2. In such case, whatever may be defendant's rights as between the corporation, its officers and himself, in so far as the public is concerned, the articles of incorporation and the certificate are conclusive. As soon as the company is incorporated by the issuance of letters patent, his subscription as therein expressed, made prior to the legal existence of the company, is binding on him as a subscriber; and he thereby agrees to pay the par value of the shares subscribed, at such times, and in such amounts, as the directors may require.

3. A subscriber to stock is generally liable on his subscription, but he can be sued only when a call is made by the board of directors. Until such call is made there is no obligation on him to pay.

4. To be relieved of the continuing liability, the subscriber may transfer his right in the shares subscribed, but such transfer must be made as required by law, subject to such regulations as may be

provided by the by-laws. Where such transfer is entered on the books of the corporation, he ceases to be liable for future calls; the consent of the corporation is, in effect, a novation, a release of the transferor's liability; and, unless there is some statutory regulation, the assignor is no longer liable for future calls on stock subscribed for by him, or held in his name.

5. Under the law of Pennsylvania, it is the duty of the corporation, when required to do so, to make due and legal transfer of stock sold and assigned, where no call remains unpaid; and, in the absence of some legal reason for not so doing, they cannot escape the performance of this act.

6. The provision of the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, providing that nothing therein shall be construed as forbidding the corporation "to hold liable for calls and assessments a person registered on its books as the owner of shares," is subject to the modification that, if the corporation accepts or consents to the transfer, the transferor will be relieved from liability.

7. In an action on a stock subscription, made in the original articles of association, where it appears there was no by-law of the corporation regulating the subject of transfer, and, while the transfer books and stock ledgers were offered, they were not used to record either the sales of stock from the corporation, or any transfers that were made thereafter, and defendant sets up, as a defense, a transfer of his subscription, it is incumbent on him to prove some act of the corporation evidencing a consent or acceptance of the transfer, to release him from liability.

8. If a corporation fails to provide the proper books to register and record transfers, and an effort is made to recover the amount of the subscription, the fact that the subscriber's name does not appear as a registered owner, will not relieve him from liability; nor will the fact that his transfer has not been made on the books hold him for his subscription, if he has in fact duly assigned his stock or interest, and the company has acted thereunder or consented to the transfer.

9. The mere delivery of the assignment to an officer of the company, or to the attorney for the real incorporators, will not be sufficient, but if delivered to the officers of the company whose duty it is to make the transfer, or whose duty it is to sign and issue new certificates, or to the attorney who was employed for the real incorporators, inter alia, to obtain the transfer, statements of such officers or attorney to the effect that the transfer was recognized or acted upon, will, under such circumstances, be sufficient to bind the company; it will be evidence of consent.

10. An attorney-at-law employed to procure a charter, unless specifically authorized, cannot accept a transfer in behalf of the

company. Such acts are not ordinarily within the scope of an attorney's authority. If he has been employed generally to act for the company in this and other matters, or if he has been employed to obtain a charter, using others as incorporators than those intended to be the real stockholders, with express or implied power to have the former transfer all their supposed interest to the latter, then his acceptance of a transfer would no doubt be binding on the company.

11. It is not illegal for an attorney to procure disinterested persons to sign a certificate of incorporation with the understanding that, when the charter is granted, a subscription to stock therein is to be assigned to the real owners; but, in a suit to enforce such subscription by a receiver of the company, it is reversible error for the court to charge that the attorney was a proper person to receive an assignment of the stock, and that if he did so, as attorney for the corporation, that would be a good delivery. In such a case the authority of the attorney must be found by the jury from the evidence.·

12. It is also reversible error for the court to charge that if the stock for which defendant subscribed in the articles of association, went into, and "was considered by those who received it as a part of, the capital, then he would not be responsible upon that capital stock......If his transfer of it was accepted by the corporation or those who controlled it,......there could be no recovery against him on that stock, or any unpaid portion of it, in the absence of proof that a demand had been made upon him prior to the time the corporation went into the hands of a receiver." This was error because defendant would be liable even though his stock "was considered by those who received it as a part of the capital stock," unless the assignment of the stock was accepted by some one authorized to receive it, and, if it was not so accepted, defendant would be liable if a call were made upon him, by order of court, after "the corporation went into the hands of a receiver."

13. If stock is subscribed with the understanding that it is to be then paid in cash, it is immediately due, and the subscriber may be proceeded against without further notice.

*Statute of limitations—Corporations—Treasurer.*

14. An action brought by the receiver of a corporation against the treasurer of the company for the amount certified by the defendant as being in his hands as treasurer at the date of the incorporation, is barred by the statute of limitations, where it appears that the suit was brought after the expiration of six years from the date of the incorporation, and after another treasurer had succeeded him.

4      SCHMITT, Receiver, Appel., *v.* KULAMER.

Argued October 13, 1919. Appeal, No. 14, Oct. T., 1918, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1915, No. 1713, on verdict for defendant, in case of Victor J. Schmitt, Receiver of the Interstate Lumber Company, v. John Kulamer. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEP-HART, JJ. Reversed in part.

Assumpsit by receiver of corporation to recover moneys alleged to be due the company. Before SWEARIN-GEN, J.

From the record it appeared that the Interstate Lumber Company was incorporated on August 25, 1909. Defendant was one of the incorporators and the original treasurer of the company. The articles of association set forth that defendant was a subscriber to twenty shares of the stock of the company, and that $5,000, being ten per cent of the capital stock thereof, had been paid into his hands as treasurer. On July 6, 1912, Victor J. Schmitt was appointed receiver of the company. Suit was brought against defendant on June 1, 1915. The plaintiff claimed to recover $2,000, the amount of the stock subscription, and $5,000, the amount in defendant's hands as treasurer at the date of the incorporation of the company. Defendant averred that he had merely signed the certificate of the association for the purpose of incorporation, and that he had transferred the stock.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned*, among others, were (1, 2) portions of charge quoted in the opinion of the Supreme Court.

*H. C. Lowe*, with him *W. C. McClure* and *Warren H. Van Kirk*, for appellant.—When a corporator signs and swears to an application for a charter, which states that he has subscribed for a certain number of shares of the

capital stock of the proposed corporation, he is estopped from contesting the truth of that fact: Rowley's App., 115 Pa. 150; Marles Carved Moulding Co. v. Stulb, 215 Pa. 91; Greater Pgh. Real Est. Co. v. Riley, 210 Pa. 283; Phila. Motor Speedway Assn. v. Sale, 69 Pa. Superior Ct. 583.

There was no evidence of any consideration for the assignment of the stock; there was no evidence of what were the terms and conditions of the contract; there was no definite proof as to who were the assignees. Hence, the evidence of the alleged contract was too vague and indefinite to sustain the contention that an assignment was made: Everhart v. West Chester & Phila. R. R., 28 Pa. 339; Cook v. Carpenter, 212 Pa. 180.

No matter in what capacity Mr. Cox acted, there was no proof offered to show that he was the attorney of the company in anything other than its incorporation. To make out his case on this point defendant should have shown his general authority to act for the company in other matters, and that when he took the alleged assignment, he was acting within the scope of his authority. It cannot be presumed: Harrington v. Stivanson, 210 Pa. 10; Snyder v. Armstrong, 6 W. N. C. 412; Smith v. Eyre, 161 Pa. 115; Douglass v. Mitchell, 35 Pa. 440.

*Thomas S. Brown,* of *Brown, Stewart & Bostwick,* for appellee.—A transfer having been made, accepted by the company, and the transferee accepted as a stockholder, such liabilities as follow the holding of the stock are transferred to the new stockholder, and the former holder is relieved therefrom: Cook v. Carpenter, 212 Pa. 177; Kirschler v. Wainwright, 255 Pa. 529; Morris v. Dunbar, 177 Fed. 159.

Opinion by Mr. Justice Kephart, March 22, 1920:

This is an action to recover for a subscription to the stock of a corporation. The plaintiff has appealed from a judgment in defendant's favor. The defendant, in the

original articles of association, certified that he had subscribed for twenty shares of the capital stock of the company then being organized. He now states that he signed the certificates merely for the purpose of incorporation. This alone will not relieve him from the obligation, assumed and certified by him, to pay the par value of the shares of stock subscribed. Whatever may be his rights as between the corporation, its officers and himself, in so far as the public and creditors are concerned, the articles of incorporation and the certificate are conclusive. As soon as the company was incorporated by the issuance of letters patent, his subscription as therein expressed, made prior to the legal existence of the company, was binding on him as a subscriber; he thereby agreed to pay the par value of the shares subscribed at such time and in such amounts as the directors might require. The subscriber is generally liable on his subscription, but can be sued only when a call is made by the board. "Until such call, there is no obligation on the stockholder to pay. It may never be made. If the enterprise is successful and profitable from the start, or the provision for capital has been larger than actual needs require, the duty of payment is only a reserve duty for possible contingencies, and, until they happen, either by calls by the corporation on the subscriptions, or by the rights of creditors, there is no duty of the subscriber to pay, no right of action against him for nonpayment, and no starting point for the statute of limitations": Cook v. Carpenter (No. 1), Lipper's App., 212 Pa. 165, 176.

To be relieved of this continuing liability, the subscriber may transfer his right or interest in the shares subscribed, but such transfer must be made as required by law, subject to such regulations as may be provided by the by-laws. Where such transfer is entered upon the books of the corporation, he ceases to be liable for future calls, the consent of the corporation is in effect a novation, a release of the transferor's liability; and, unless there is some statutory regulation, the assignor is no

longer liable for future calls on stock subscribed for him, or held in his name: 7 R. C. L., sec. 234, p. 256. Under the law in this State it is clearly the duty of the corporation, when required to do so, to make due and legal transfer of stock sold and assigned where no call remains unpaid, and, in the absence of some legal reason for not so doing, they cannot escape the performance of this act. Under the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, it is indicated how the title to shares of stock may be transferred, but (section 3) nothing therein shall be construed as forbidding the corporation "to hold liable for calls and assessments a person registered on its books as the owner of shares." This is subject to the modification that if the corporation accepts or consents to the transfer, the transferor will be relieved of liability.

In this case there was no by-law regulating the subject of transfers, and, while the transfer books and stock ledgers were offered, they were not used to record either the sales of stock from the corporation, or any transfers that were made thereafter; and, as the appellee defended on a transfer of his subscription, it was incumbent on him to prove some act on the part of the corporation evidencing a consent or acceptance of the transfer, to release him from liability. There is no minute showing the acceptance of the assignment, nor is there evidence that the company transferred the shares owned by the subscriber to another by issuing a new certificate, nor that any one was authorized in its behalf to accept or consent to the transfer. See Bell's App., 115 Pa. 88. An attorney-at-law, employed to procure a charter, cannot, unless specifically authorized, accept a transfer in behalf of the company. Such acts are not ordinarily within the scope of an attorney's authority. If he has been employed generally to act for the company in this and other matters, or if he has been employed to obtain a charter, using others than those intended to be the real stockholders, with express or implied power to have the

former transfer all their supposed interest to the latter, then his acts would no doubt be binding on the company: Harrington v. Stivanson, 210 Pa. 10; Snyder v. Armstrong, 6 W. N. C. 412; Smith v. Eyre, 161 Pa. 115; Douglass v. Mitchell's Exr., 35 Pa. 440.

It will be noted in this case that the so-called books of the company do not show the registry of stock in any person's name and we learn of this subscription, as hereinabove noted, and others, only from the testimony that the company actually did issue shares of stock. If the company failed to provide the proper books to register and record transfers, and an effort is made to recover the amount of the subscription, the fact that the subscriber's name does not appear as a registered owner will not relieve him from liability; nor will the fact that his transfer has not been made on the books, hold him for his subscription, if he has in fact duly assigned his stock or interest and the company has acted thereunder or consented to the transfer. The mere delivery of the assignment to an officer of the company, or to the attorney for the real incorporators, would not be sufficient, but if delivered to the officers of the company whose duty it is to make the transfer, or whose duty it is to sign and issue new certificates, or to the attorney who was employed for the real incorporators, inter alia, for obtaining the transfer, statements of such officers or attorney to the effect that the transfer was recognized or acted upon would, under such circumstances, be sufficient to bind the company; it would be evidence of consent. It is not illegal for an attorney to procure disinterested persons to sign a certificate of incorporation with the understanding that when the charter is granted the subscription is to be assigned to the real owners. In such case, the law must be complied with as indicated herein.

Unhappily the case was not submitted to the jury along the lines above set forth. Among other things, the trial judge said: "Mr. Cox, who it is admitted was

the attorney for the corporation,......would be a proper party to receive that paper, and if he did receive it as the attorney for the corporation, that would be a good delivery, and you would be justified in so finding. It would be an act which an attorney could do under the authority of his employment, and then if, for any reason, the paper is lost and cannot be produced, that is no fault of the defendant." This authority as an attorney should have been found by the jury from the evidence.

Further on the court charged the jury: "Now, if that transfer of all his interest was made as stated, and you find that to be true, then you come to consider the effect of it. The defendant was one of the original incorporators of the corporation. If his twenty shares of stock went into, and was considered by those who received it as a part of, the capital stock, then he would not be responsible upon that capital stock. If it was accepted, if his assignment or transfer of it was accepted by the corporation, or those who controlled it, then under the law there could be no recovery against him on that stock, or any unpaid portion of it, in the absence of proof that a demand had been made upon him prior to the time the corporation went into the hands of the receiver." This also was error, for defendant would be liable even though his stock "was considered, by those who received it, as a part of the capital stock," unless the assignment of his interest in the company or the stock was accepted by some one authorized to receive it; and, if it was not so accepted, defendant would be liable if a call were made upon him, by order of court, after "the corporation went into the hands of the receiver."

Another important question not passed on by the court below is as to whether a call had been made. As we have stated, the directors may make calls in such amounts and at such times as in their judgment they deem wise and proper, but if the stock was subscribed with the understanding that it was to be then paid in cash, it is immediately due and the subscriber may be

proceeded against without further notice. The minutes make no reference to this, except where it is stated the shares of stock shall be of the par value of $100 and shall be nonassessable. Inasmuch as the statute of limitations was interposed as a defense, it was important to know exactly what the facts were in regard to the stock, so far as related to this matter.

The claim for the amount certified by the appellee as being in his hands as treasurer at the date of incorporation is clearly barred by the statute. The minutes show the treasurer was succeeded by another more than six years prior to the institution of this action; if the corporation had any claim against him, it should have proceeded to collect it. Not having done so within six years, the corporation and the receiver afterwards appointed are barred. But it appears in the evidence that the money was in the hands of his successor. Whether that is true is not now material.

The first and second assignments are sustained, the judgment is reversed so far as the claim upon the stock is concerned, and a new venire awarded.