## Gordon, Secretary of Banking, *v.* Northern Trust Company et al., Appellants.

Argued October 15, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Joseph P. Gaffney,* with him *Joseph P. Gaffney, Jr.,* and *Frank W. O'Donnell,* for appellants.

*Reynolds D. Brown,* with him *Robert L. Myers, Jr.,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY PARKER, J., February 28, 1936:

This is an action by the receiver of a closed bank against the defendants, alleged owners of twelve shares of stock in the bank, for the amount of a call for the balance of an unpaid subscription to the capital stock of the corporation. Judgment was entered for the plaintiff for want of a sufficient affidavit of defense and defendants have appealed to this court.

The facts are within a narrow compass and, so far as the immediate question is concerned, are not in

dispute. A pure question of law is therefore involved. Isaac D. Hetzell died testate on March 7, 1931, possessed of one hundred shares of stock in the Royersford Trust Company and having appointed the defendants executors of his estate as well as trustees for Elizabeth H. Guiniven. The executors filed an account which was duly audited and a schedule of distribution which was approved. Such distribution showed the award of twelve shares of stock in the bank to defendants as trustees for Elizabeth H. Guiniven, a legatee under the will of decedent. We must assume from the pleadings, for the purpose of the motion for judgment, that the certificate for twelve shares was never actually endorsed by the executors to themselves as trustees nor any manual delivery made of the certificate, and that there was no transfer of the twelve shares of stock on the books of the corporation. In addition, there was not any averment in the statement of claim that the bank had, by payment of dividends or other conduct, so acted that it would be estopped from denying that it had accepted the trustees as stockholders in the corporation in the place of the decedent or his executors. The receiver was appointed on June 10, 1932, and the call for the balance of the subscriptions to stock sufficient to pay creditors was made on March 1, 1934. The parties on this appeal in their arguments, as well as the court below in its opinion, have confined their attention largely to a question as to whether the ownership of the stock passed from the executors to the trustees. The court below concluded that the trustees became the holders and owners of the stock immediately on the award of the estate to them as trustees and the filing of the schedule of distribution. We will assume, for the sake of argument, that the court below correctly held that the ownership of the stock as between executors and trustees passed to the trustees on approval of the schedule of distribution. We cannot agree with

the conclusion that "liability for an unpaid subscription on stock attaches by reason of the [mere] ownership of the stock at the time of the call," for the company had not yet recognized the transferee as a stockholder.

Prior to the Corporation Act of 1874, the Supreme Court had held in several cases that the original subscriber was alone liable and that the transferee was not liable. In Franks Oil Co. v. McCleary, 63 Pa. 317, the Supreme Court said: "There is nothing in the Act of the 18th of July 1863, under which the plaintiff was created a corporation, nor in any by-law of the company, or the precedent association out of which it was created, brought to our notice, which makes it an incident of receiving a transfer of assessable stock, that the holder thereof becomes personally liable to pay the assessments which may be made by the company." In support of this proposition the court referred to The Canal Co. v. Sansom, 1 Binn. 70, and Palmer v. The Ridge Mining Co., 10 Casey 288.

As was pointed out in Bell's Appeal, 115 Pa. 88, 94, 8 A. 177, as to corporations formed under the general law of 1874, the seventh section of that act expressly imposed upon transferees of stock when the stock was transferred on the books of the corporation all the liabilities and obligations of original subscribers. The court in that case further said: "We think, therefore, the transferee of stock in an incorporated company is liable for calls made after he has been accepted by the company as a stockholder and his name has been registered on the stock books as a corporator; and being thus liable there is an implied promise that he will pay calls made while he continues the owner." The decisions arising since that time have all recognized this rule.

The 7th section of the Corporation Act of 1874 was supplied by the Act of June 24, 1895, P. L. 258, as amended by Act of April 10, 1929, P. L. 480, and Act

of March 20, 1931, P. L. 4 (repealed as to business corporations by Act of May 5, 1933, P. L. 364, Art. XII, §1202) (15 PS 133). By that statute it is provided that any stockholder of any company incorporated under the laws of this Commonwealth shall be entitled to receive a certificate for the number of shares standing to his credit on the books of the corporation and that such certificate shall be transferable "on such books at the pleasure of the holder, in person or by attorney, duly authorized as the by-laws may prescribe, subject however to all payments due or to become due thereon; and the assignee or party to whom the same shall have been so transferred shall be a member of said corporation and have and enjoy all the immunities, privileges and franchises and be subject to all of the liabilities, conditions and penalties incident thereto, in the same manner as the original subscriber or holder would have been."

The case of Cook v. Carpenter, 212 Pa. 177, 61 A. 804, was one in which claim was made against a transferor where the transfer had not yet been made on the books of the corporation, and it was held that the transferor was not discharged, Mr. Chief Justice MITCHELL saying in that connection (p. 180): "The principle of the decisions is that the transfer must be complete and in accordance with the by-laws of the corporation to fix the liability of the transferee and release the transferor." Again in Schmitt, Receiver, v. Kulamer, 267 Pa. 1, 6, 110 A. 169, Mr. Justice KEPHART, now Chief Justice KEPHART, said: "To be relieved of this continuing liability, the subscriber may transfer his right or interest in the shares subscribed, but such transfer must be made as required by law, subject to such regulations as may be provided by the by-laws. Where such transfer is entered upon the books of the corporation, he ceases to be liable for future calls, the consent of the corporation is in effect a novation, a

release of the transferor's liability; and, unless there is some statutory regulation, the assignor is no longer liable for future calls on stock subscribed for him, or held in his name."

"Until a transfer is recorded in the transfer book of the corporation, the transferee, not being duly recognized as a stockholder, is not chargeable either with corporate debts or unpaid balances of the subscription": Cook on Corporations, §258. Also, see Peoples Home Sav. Bk. v. Stadtmiller, 150 Cal. 106, and Marlborough Mfg. Co. v. Smith, 2 Conn. 579. It is clear that the trustees, the defendants here, were never accepted by the corporation as stockholders and there being, therefore, no contractual relation or privity of contract between them, defendants are not liable.

As is pointed out by Mr. Justice KEPHART in Schmitt, Receiver, v. Kulamer, supra (p. 7): "Under the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, it is indicated how the title to shares of stock may be transferred, but (section 3) nothing therein shall be construed as forbidding the corporation 'to hold liable for calls and assessments a person registered on its books as the owner of shares.'"

Judgment reversed with a procedendo.