## Bell, Secretary of Banking, Appellant, *v.* Frankford Trust Company et al.

518

Argued December 6, 1943. Before BALDRIGE, STADT-FELD, RHODES, HIRT and KENWORTHEY, JJ. (KELLER, P. J. and RENO, J., absent).

*J. Lawrence Grim,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellant.

*Henry Panfil,* of *Moore, Gossling & Panfil,* with him *Howard I. James,* for appellees.

OPINION BY RHODES, J., March 6, 1944:

This appeal is from the judgment entered by the court below in an action of assumpsit brought by the Secretary of Banking of the Commonwealth of Pennsylvania as receiver of the insolvent Cornwells State Bank against the Frankford Trust Company and Gertude Thomas, trustees under the last will and testament of Otto Zschamisch, deceased. Plaintiff claimed an assessment from defendants as the alleged owners and holders of 95 shares of stock of the insolvent Cornwells State Bank. The case was tried by a judge without a jury under the Act of April 22, 1874, P. L. 109, as amended, 12 PS §§688, 689. Exceptions to the findings of fact and conclusions of law were dismissed and judgment was entered for part of plaintiff's claim according to the decision previously filed. Plaintiff has appealed.

The facts as found by the trial judge are not in dispute. Appellant contends that the legal conclusions drawn therefrom are incorrect. The facts may be summarized:

Otto Zschamisch died on June 2, 1929, and by his last will and testament appointed the Frankford Trust Company and Gertrude Thomas as executors of his estate, and as trustees of his residuary estate for the uses and purposes therein set forth. The will was probated on July 9, 1929, and the Frankford Trust Company and Gertrude Thomas were granted letters testamentary on that date. At the time of his death decedent was the owner of 84 shares of the capital stock of the Cornwells State Bank, and this was included in the inventory of his estate as filed in the office of the Register of Wills of Bucks County on January 25, 1930. The first and final account of the executors was filed on June 13, 1932. It was duly advertised according to law, and confirmed absolutely on April 26, 1933.[1]

---

[1] This amounted to constructive notice to all persons who had

There was no adjudication of the account or decree of distribution by the Orphans' Court of Bucks County, since such procedure was not then required under the rules of that court. The certificate for the 84 shares of stock remained in the name of decedent on the books and stock ledger of the bank. Such certificate was never endorsed, transferred, or assigned by the executors to themselves as trustees, and the stock has never been accepted as part of the corpus of the trust. The trustees have never exercised any dominion, control, or right of ownership over this stock. They have never received any benefit therefrom, and there has been no transfer of ownership or delivery of possession to them. The remaining 11 shares upon which an assessment was levied were issued to the "Frankford Trust Company and Gertrude Thomas, Executors and Trustees under the Will of Otto Zschamisch, Deceased," and were so registered upon the books of the bank. The certificate was dated February 28, 1930. The Cornwells State Bank was closed on December 24, 1931, and in November, 1936, the statutory receiver levied an assessment of 85 per cent upon the par value ($50) of the bank stock. Notice of the assessment on the 84 shares was sent to decedent. Notice of the assessment on the 11 shares was sent in the registered name. When the trustees assumed their duties on April 26, 1933, the date that the final account of the executors was confirmed, they rejected and refused to accept the bank stock as part of the trust estate, and the following notation was made on the books of the Frankford Trust Company: "4-26-33 Asset worthless. (Bank closed 12-24-31) Trustees refuse to accept and have rejected the stock."

---

not given the executors written notice of their claim against decedents estate. *Mack's Estate*, 111 Pa. Superior Ct. 20, 23, 169 A. 468; *Lorch's Estate*, 284 Pa. 500, 131 A. 381; Fiduciaries Act of June 7, 1917, P. L. 447, §46(c), p. 511, 20 PS §833.

The trial judge concluded that the trustees were not the owners of the 84 shares of stock, and that they were not liable for the assessment, but that appellant was entitled to recover from them the amount of the assessment levied upon the 11 shares of stock.[2]

The position of appellant is that the trustees are liable because they were the owners of the 84 shares of stock upon which the assessment was made at the time of the assessment. This position is predicated upon the contention that title vested in the trustees upon probate of the will, and that they had no power to subsequently reject. This would be a logical basis for their liability if appellant's theory is correct, as the rejection of the stock by them was after the date that the bank failed to meet its obligations. We have said that the liability of a stockholder to an assessment in case the insolvency of the bank is subsequently ascertained is fixed as of the date of the bank's failure to meet its obligations. *State of Ohio ex rel. Squire v. Union Trust Co. of Pittsburgh,* 137 Pa. Superior Ct. 75, 81, 8 A. 2d 476. The pertinent dates are: Decedent died on June 2, 1929; the 84 shares of stock were in his name at the time, and there has been no change in this respect either on the books of the bank or on the certificate or certificates themselves; the Cornwells State Bank was closed on December 24, 1931, because it was unable to meet its obligations, and the statutory receiver took possession; the executors' account was confirmed absolutely on April 26, 1933, and on that date the trustees rejected the stock; the assessment notice was dated November 25, 1936; suit was instituted against the trustees on July 23, 1940.

We are unable to agree with appellant that, under the facts, the trustees are the persons against whom the statutory liability on the 84 shares of stock can be en-

---

[2] There has been no appeal by the trustees from the judgment.

forced. They were never the stockholders of record, and there is nothing to indicate that they were the real owners of the stock when the operations of the bank were suspended, or when the assessment was made. It makes no difference that the executors and the trustees were the same. They acted in two distinct representative capacities, and the legal effect is not different from what it would have been if there had been two separate identities. When the executors stated their account, and after confirmation, their functions as executors ceased except as to distribution. Thereafter they acted as trustees not by reason of the fact that they had been executors, but by virtue of the appointment contained in the will. *Mack's Estate,* 111 Pa. Superior Ct. 20, 169 A. 468. Until the administration of the estate had been concluded by the executors, there could have been no certainty that the stock in question would have remained to be distributed as a part of the residuary estate. Like any other asset of the estate not specifically bequeathed, this stock was under the control of, and subject to disposal by, the executors. The executors were under duty to administer the estate and make distribution; the trustees were bequeathed and devised the residue for the purposes stated. Consequently, it cannot be said that the trustees became vested with the title to this specific stock upon probate of the will.

The Uniform Stock Transfer Act of May 5, 1911, P. L. 126, §21, 15 PS §321, provides: "The person to whom a certificate was originally issued is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he indorses the certificate to another specified person." In Cook on Corporations, 8th Ed., §258, the principle is stated: "The general rule is that the transferor is not released from liability until the transfer is duly registered in the corporate books. This rule, however, is subject to an important exception, namely; that where the corporation

accepts the transferee as a stockholder and pays dividends to him, or where, through the negligence or fault of the corporation no transfer on the books is made, in such cases the transferor is released, and the transferee only is liable on the stock although the stock still stands on the corporate books in the name of the transferor." See *Gordon v. Northern Trust Co.*, 121 Pa. Superior Ct. 79, 183 A. 352.

The right to levy an assessment on stock is wholly statutory, and for appellant to hold the trustees liable it must appear that they acquired ownership of the stock, and hence were subject to statutory liability as stockholders. Appellant asserts that without a decree of distribution the unadministered assets remain in the estate. Then the trustees could not be liable, as they did not become the owners of the stock upon probate of the will. Of course, distribution from executors to trustees is actual distribution even though they are the same persons. The stock did not automatically become the property of the trustees merely because they were the same persons. Under the facts, it does not appear that they voluntarily or by operation of law became the real owners of the stock in question and subject to liability thereafter.

The trustees were not bound to accept the stock upon the confirmation of the executors' account if, in the exercise of reasonable care and prudence, its rejection was advisable or necessary for the benefit and preservation of the trust estate. " 'The assignees of a bankrupt are not bound to take what Lord Kenyon called a "damnosa haereditas," viz., property of the bankrupt, which so far from being valuable, would be a charge to the creditors' ": *Provident Life & Trust Co. of Philadelphia v. Fidelity Insurance, Trust & Safe Deposit Co.*, 203 Pa. 82, at page 90, 52 A. 34, at page 37. In *Reynolds et al. v. Cridge*, 131 Pa. 189, at page 194, 18 A. 1010, at page 1011, it is said: "That an executor may abandon prop-

erty pledged, or subject to assessment, if there is no value over the debt or the assessment to be preserved for the estate, was ruled by Chief Justice SHAW in *Ripley v. Sampson,* 10 Pick. 373." In the present case there was nothing which required the trustees to act in a manner contrary to the exercise of ordinary prudence.

Judgment is affirmed.